M. ANDERSON BERRY (262879)
aberry@justice4you.com
ALEX SAUERWEIN (334830)
asauerwein@justice4you.com
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

JOHN A. YANCHUNIS (*Pro Hac Vice*)
jyanchunis@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813)223-5505
Facsimile: (813)223-5402

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ALEX PYGIN,<br><br>       Plaintiff,<br><br><br>       v.<br><br><br>BOMBAS, LLC, et al.,<br><br>       Defendant. | Case No.: 4:20-cv-04412-JSW<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REPRESENTATIVE PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>COURTROOM: 5<br>JUDGE: Hon. Jeffrey S. White<br>DATE: November 19, 2021<br>TIME: 9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 19, 2021 at 9:00 am, in Courtroom 5 of the United States District Court Northern District of California Oakland Courthouse, 1301 Clay Street, Oakland CA 94612, the Honorable Judge White, presiding, Representative Plaintiff Alex Pygin will and hereby moves for an Order pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure ("Rule(s)") awarding: (i) Attorneys' Fees to Class Counsel in the amount of $56,250, which is 25 percent of the $225,000 non-reversionary Class Settlement Amount; (ii) unreimbursed expenses totaling $8,022.97 that Class Counsel reasonably and necessarily incurred in furtherance of the prosecution of this Action; and (iii) a total of $1,000 as a Service Award for Representative Plaintiff Alex Pygin.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying joint and individual declarations of M. Anderson Berry and John A. Yanchunis and the exhibits attached thereto, the Plaintiff's declarations, the pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should award $56,250, which is 25 percent of the $225,000 Class Settlement Amount, to Class Counsel as Attorneys' Fees;

2.      Whether the Court should award $8,022.97 in unreimbursed expenses that Class Counsel reasonably and necessarily incurred in furtherance of the Action; and

3.      Whether the Court should award a Service Award to Representative Plaintiff Pygin of $1,000 for Representative Plaintiff Pygin's time and effort in pursuing this Action.

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEYS' FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.    INTRODUCTION…………………………………………………………......1

II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION…………………3

III.    ARGUMENT……………………………………………………………………6

    A.    The Requested Award is Fair and Reasonable by Ninth Circuit Standards………6

    B.    The Award Request is Supported by the Percentage-of-Recovery Method………7

        1. The Results Achieved Here…………………………………………………8

        2. The Risk and Nature of the Litigation……………………………………...10

        3. The Skill Required to Prosecute this Action Effectively……………………...11

        4. Awards in Similar Cases……………………………………………………12

    C.    The Fee Request is Reasonable Under the Lodestar Cross-Check………………12

IV.    Class Counsel's Reasonable Expenses Should be Reimbursed………………...............15

V.    Request for Plaintiff Service Award..……...…………………………………16

VI.    Conclusion…………………………………………………………………16

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEYS' FEES AWARD, EXPENSE
REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
SUPPORT THEREOF

1

## <u>TABLE OF AUTHORITIES</u>

2

### Cases

3

*Adkins v. Facebook, Inc.*, No. C 18-05982 WHA,
4
2019 U.S. Dist. LEXIS 206271
5
(N.D. Cal. Nov. 26, 2019) ................................................................................ 11

6
*Antman v. Uber Techs., Inc.,* No. 3:15-cv-01175,
2015 U.S. Dist. LEXIS 141945
7
(N.D. Cal. Oct. 19, 2015) ................................................................................ 10

8
*Bellinghausen v. Tractor Supply Co.,*
9
306 F.R.D. 245 (N.D. Cal. 2015) ................................................................... 17

10
*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......................................................................................... 6
11

12
*Carter v. Hot Topic, Inc.*, No. 2:13-cv-04153-SJO (JCx)
(C.D. Cal. Apr. 13, 2016)................................................................................ 14
13

14
*DeFrees v. Kirkland*, No. CV 11-4272 GAF (SPx),
2014 U.S. Dist. LEXIS 157320
15
(C.D. Cal. Nov. 4, 2014) ................................................................................. 14

16
*Fulton-Green v. Accolade, Inc.*, No. 18-274,
2019 U.S. Dist. LEXIS 164375
17
(E.D. Pa. Sept. 24, 2019) ................................................................................ 14

18
*Gonzalez v. City of Maywood*,
19
729 F.3d 1196 (9th Cir. 2013) ........................................................................ 14

20
*Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB),
2010 U.S. Dist. LEXIS 71996
21
(S.D.N.Y. June 25, 2010) ................................................................................ 11

22
*In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx),
2014 U.S. Dist. LEXIS 184548
23
(C.D. Cal. July 28, 2014) ................................................................................ 12

24
*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK,
2018 U.S. Dist. LEXIS 140137
25
(N.D. Cal. Aug. 17, 2018) ........................................................................ *passim*

26
*In re Bluetooth Headset Products Liab. Litig.*,
27

28

iv
PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEYS' FEES AWARD, EXPENSE
REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
SUPPORT THEREOF

654 F.3d 935 (9th Cir. 2011) ................................................................................ 7

*In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD,
2018 U.S. Dist. LEXIS 169764
(N.D. Cal. Sept. 21, 2018) ................................................................................ 13

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998,
2010 U.S. Dist. LEXIS 87409
(W.D. Ky. Aug. 20, 2010) ................................................................................. 11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT,
2020 U.S. Dist. LEXIS 11820
(N.D. Ga. March 17, 2020) ........................................................................ *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM),
2010 U.S. Dist. LEXIS 119702
(S.D.N.Y. Nov. 8, 2010) ................................................................................... 13

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) ............................................................................ 11

*In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK,
2015 U.S. Dist. LEXIS 118052
(N.D. Cal. Sept. 2, 2015) .................................................................................. 16

*In re LendingClub Sec. Litig.*, No. C 16-02627 WHA,
2018 U.S. Dist. LEXIS 163500
(N.D. Cal. Sept. 24, 2018) ................................................................................ 16

*In re Lenovo Adware Litig.*, No. 15-md-02624-HSG,
2019 U.S. Dist. LEXIS 69797
(N.D. Cal. Apr. 24, 2019) ................................................................................... 8

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1995) ................................................................ 16

*In re Nexus 6P Prods. Liab. Litig.*, No. 17- cv-02185-BLF,
2019 U.S. Dist. LEXIS 197733
(N.D. Cal. Nov. 12, 2019) ................................................................................... 8

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................. 8

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ............................................................................ 17

v
PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEYS' FEES AWARD, EXPENSE
REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
SUPPORT THEREOF

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ........................................ 9

*In re Target Corp. Customer Data Sec. Breach Litig.*,
2017 U.S. Dist. LEXIS 75455
(D. Minn. May 17, 2017) ........................................................9

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
2016 U.S. Dist. LEXIS 200113
(N.D. Ga. Aug. 23, 2016)........................................................9

*In re TJX Cos. Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007) ........................................... 11

*In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) .......................................... 13

*In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK
2016 U.S. Dist. LEXIS 115056
(N.D. Cal. Aug. 25, 2016) .................................................... 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK
2020 U.S. Dist. LEXIS 129939
(N.D. Cal. July 22, 2020) ........................................................9

*Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX,
2013 U.S. Dist. LEXIS 186262
(C.D. Cal. Dec. 23, 2013) ...................................................... 7

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ............................................... 10

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ............................................... 14

*Perez v. Rash Curtis & Assocs.*,
2020 U.S. Dist. LEXIS 68161
(N.D. Cal. April 17, 2020) .................................................... 13

*Six Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ............................................... 6

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................................6

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEYS' FEES AWARD, EXPENSE
REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
SUPPORT THEREOF

1
2

*Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx),
2015 U.S. Dist. LEXIS 98546
(C.D. Cal. July 27, 2015) ................................................................. 8

3
4

*Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST,
2018 U.S. Dist. LEXIS 82801
(N.D. Cal. May 15, 2018) ................................................................. 7

5
6

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ................................................... *passim*

7
8

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997) ........................................................ 12

9

*Wininger v. SI Mgmt. L.P.*,
301 F.3d 1115 (9th Cir. 2002) ...................................................... 16

10
11

**Other Authorities**

12

5 Newberg on Class Actions §§ 15:62, 15:65 (5th ed. 2018) ........................8

13

**Rules**

14

Fed. R. Civ. Pro. Rule 23(h) ......................................................... 6

15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEYS' FEES AWARD, EXPENSE
REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
SUPPORT THEREOF

## MEMORANDUM IN SUPPORT OF MOTION

Plaintiff Alex Pygin ("Plaintiff"), through his undersigned counsel, respectfully moves this Court for entry of an Order approving: (1) Class Counsel's requested attorneys' fees award of $56,250, or 25 percent of the $225,000 Settlement Fund; (2) expense reimbursement totaling $8,022.97; and (3) a service award payment to Representative Plaintiff Pygin of $1,000.

## I.   INTRODUCTION

This data breach action arises out of the alleged negligence by Bombas, LLC ("Bombas"), Shopify (USA) Inc. ("Shopify USA"), and Shopify, Inc. (collectively, "Defendants") in failing to safeguard and protect customer Personally Identifiable Information ("PII") from unauthorized access and disclosure.  As a result, when Bombas experienced a security incident whereby unauthorized third parties accessed Bombas' customers' PII used to purchase products from Bombas' website from November 11, 2016 to February 16, 2017 via Shopify's third-party ecommerce platform, the hackers exfiltrated everything they needed to illegally use Bombas' customers' credit cards to make fraudulent purchases.

Following the filing of the class action complaint, Defendants' motions to dismiss and Class Counsel's oppositions thereto, the Parties exchanged informal discovery and engaged in a day-long mediation session on February 12, 2021 with mediator Martin Quinn, Esq.  The Parties negotiated the terms of the Settlement Agreement and reached a resolution that—if accepted—will resolve all pending litigation and provide substantive relief to the 83,367 Settlement Class Members ("Class Members") .[1]

The settlement is a fair resolution of this high-risk complex litigation and provides substantial monetary benefits to Class Members.  Through Class Counsel's efforts, a Settlement Fund of $225,000 has been created which will pay for: (1) all payments of valid claims from Settlement Class Members; (2) the costs of claims administration; (3) attorneys' fees, costs and

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement and Release (the "Agreement" or "Settlement Agreement" or "SA"), attached as Exhibit 1 to the Joint Declaration of John A. Yanchunis and M. Anderson Berry in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 48.4).

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

litigation expenses   to be determined by the Court; and (4) a Class Representative service award. *See* SA, §§ 1.40, 2.1.  Eligible Class Members may receive: (1) a "Basic Award" of up to $50.00, regardless of whether or not he or she experienced any fraudulent or unauthorized charges, or identity theft, as a result of the Security Incident; and (2) an "Expense Reimbursement Award" of up to $2,500 for lost time in dealing with unauthorized charges as well as reimbursement for out-of-pocket expenses related to the data breach, subject to proration if there are insufficient funds to pay these amounts based on the number of claimants.  *Id*., §§ 2.2, 2.2.1, 2.2.2.

If the total dollar value of all Approved Claims is less than the amount remaining in the Settlement Fund after the Claims Deadline has passed, and after the Attorneys' fees and Expenses Award, Service Award, and the Claims Administration costs have been paid in full out of the Settlement Fund, the payment amount for all Approved Claims shall be increased *pro rata* among all Settlement Class Members who submitted Approved Claims up to a maximum of twice the total amounts of the Basic Award and Expense Reimbursement Award. For example, the Basic award can be increased up to a maximum of $100.00 and the Reimbursement Award payment can be increased up to a maximum of $5,000.00. *See id*., § 7.3.1.

If the total dollar value of all Approved Claims exceeds the amount remaining in the Settlement Fund after the Claims Deadline has passed and after the Attorneys' Fees and Expenses Award, Service Award, and Claims Administration costs have been paid in full out of the Settlement Fund, the payment amount for all Approved claims shall be reduced *pro rata* among all Settlement Class Members who submitted Approved Claims. *See id*., § 7.3.2.  Any funds remaining in the Settlement Fund after distributions to Class Members will be distributed to a *cy pres* recipient, selected by the Parties with approval from by Court. *Id*., § 7.6.

In addition, to help protect its customers, Bombas has agreed to take extensive and costly steps to secure access to the e-commerce platform through which it processes credit card and debit card transactions.  Among other things, Bombas has agreed to maintain the following security measures through at least January 1, 2023: create and implement a Written Information Security Policy ("WISP") that follows applicable state cybersecurity requirements, annually train employees on the WISP and related data protection topics, implement a strong password policy

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE
REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
SUPPORT THEREOF

to the extent technically feasible for systems that allow access to personal information, and implement multi-factor authentication for the e-commerce platform and elsewhere to the extent technically feasible for systems that allow access to Personal Information. *See* SA, § 2.5.

For their efforts in achieving these results, Class Counsel seeks an award of attorneys' fees of 25 percent of the Settlement Fund, or $56,250, and reimbursement of Class Counsel's reasonable and necessary expenses totaling $10,000. Additionally, Class Counsel also seek a service award of $1,000 to Representative Plaintiff Pygin in recognition of the time, effort, and expense incurred pursuing claims that benefited the Settlement Class. *See* S.A., § 9.2. Defendants do not oppose this motion.

As discussed below, the fee request is reasonable when considered under the applicable Ninth Circuit standards, and is well within the normal range of awards made in contingent-fee class actions in this Circuit. Under a lodestar calculation, considering combined fees of $156,147.90, the requested award of fees represents a negative multiplier of 0.36 applying Class Counsel's customary hourly rates. Joint Declaration of M. Anderson Berry and John A. Yanchunis in Support of Plaintiff's Motion for Approval of Attorneys' Fees Award, Expense Reimbursement, and Service Award to Representative Plaintiff ("Joint Decl."), ¶ 27. The requested service award for the Representative Plaintiff is reasonable for this type of action and should be approved.

## II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

Bombas is a New York company with its principal place of business in New York. ¶ 11.[2] Bombas has sold high-end children's clothing through mail order and retail stores since 1983. ¶ 17. Shopify (USA) Inc. is a Delaware company with its principal place of business in San Francisco, California. ¶ 12. Shopify Inc. is a Canadian company with its principal place of business in Ontario, Canada. ¶ 13. Shopify Inc. previously acquired and/or created Shopify (USA) Inc. and is jointly responsible for the wrongful activities by Shopify (USA) Inc. *Id*.

Bombas used Shopify's proprietary ecommerce platform, which provides businesses with a user-friendly way to sell items online. ¶ 26. This platform takes the key payment and personal

---

[2] References to "¶" are to the Complaint, unless otherwise noted.

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

information from customer to finalize the transaction: name, billing and shipping addresses, payment card type and number, CVV (security) code, credit card expiration date, email address and sometimes telephone number.   ¶ 26.   Shopify touts the secure nature of its e-commerce platform to retailers by stating, for example: "Running a secure ecommerce solution and keeping your online store safe is our number one priority. We continuously invest significant time and money to adjust to the latest threats." ¶ 28.   Bombas similarly assures its customers that it is concerned about PII security by stating: "Bombas will take all steps reasonably necessary to ensure that your data is treated securely and in accordance with [Bombas'] Privacy Policy and no transfer of your personal data will take place to an organization or a country unless there are adequate controls in place including with respect to the security of your personal data." ¶ 18.

To purchase items on Bombas' website, customers can either create an account or check out as a guest. ¶ 26. Both choices use Shopify Plus. *Id*. Further, both choices require, at a minimum, that the customer enter the following PII onto the website: name; billing and shipping addresses; telephone number; email address; name on the credit card; type of credit card; full credit card number; credit card expiration date; and security code, or CVV code (card verification number). *Id*.

In early June of 2020, Bombas sent customers a *Notice of Data Breach,* informing them that an unauthorized third party had "entered a malicious code that [is] designed to scrape credit card numbers and other personal information" from the Shopify e-commerce platform. ¶ 30.   This code collected data on purchases made between November 11, 2016 and February 16, 2017. *Id*.

On or about June 3, 2020, Bombas' counsel mailed a different *Notice of Data Breach* to the Attorneys General of the states where affected customers reside, including California, which also disclosed that security measures installed by Shopify did not fully protect Bombas' transactions because there was a period of time, from November 11, 2016 to February 16, 2017, when a malicious code was active.   ¶ 32.   Neither Bombas nor Shopify detected or reported the data breach when it happened. ¶¶ 33-34. The failure to discover the data breach resulted in four years passing without any notice to consumers about their risk of stolen data. *Id*.

After Bombas issued the *Notice of Data Breach*, Plaintiff filed a Complaint on July 1,

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

2020, alleging six causes of action: (1) negligence; (2) negligence *per se*; (3) invasion of privacy.; (4) declaratory relief; and (5) violation of the California Unfair Competition Law, Business and Professions code section 17200, *et seq*.  Plaintiff sought several types of equitable and monetary relief on behalf of all persons whose PII was compromised as a result of Defendants' alleged failure to: (i) adequately protect its users' PII; (ii) warn users of its inadequate information security practices; and (iii) effectively monitor Bombas' website and ecommerce platform for security vulnerabilities and incidents.

Subsequently, the Parties informally exchanged discovery with respect to Plaintiff's purchases and injuries, as well as the class allegations.  The Parties also drafted and exchanged mediation briefs and then participated in an all-day mediation with Martin Quinn, Esq. on February 12, 2021. The mediation was successful; the Parties agreed on the material terms of the settlement. The Parties then negotiated the terms of the Settlement Agreement and its exhibits over the subsequent months.  The Settlement Agreement was executed by all parties on May 20, 2021, and this Court granted preliminary approval on July 12, 2021.  ECF No. 51.

The Settlement Administrator (Angeion) began providing Notice to the members of the Settlement Class via email on August 10, 2021. Joint Decl., ¶ 20.  The Summary Notice advised class members that the $225,000 Settlement Fund would be used to pay valid claims from Settlement Class Members, Class Counsel's attorneys' fees and costs and any service award to Representative Plaintiff.  The Summary Notice also advised class members that that the full Class Notice was available at www.bombassettlement.com.

The Class Notice advised Class Members that Class Counsel "will request the Court's approval of an award for attorneys' fees up to 25 percent of the Settlement Fund (or up to $56,250), plus reasonable costs and expenses (approximately $10,000), which shall be paid from the Settlement Fund." SA ¶ 4.2   The Objections deadline is October 12, 2021.  As of the date of this filing, no objections to any aspect of the Settlement, including the request for attorneys' fees, reimbursement of expenses or service awards for the Representative Plaintiffs, have been received.  *See* Joint Decl., ¶ 20.

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.     ARGUMENT

### A.     The Requested Award is Fair and Reasonable by Ninth Circuit Standards

Under the "common fund" or "common benefit" doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). *See also* Rule 23(h) ("[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement."). This rule is equitable in nature and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* at 478; *see also Staton v. Boeing Co*., 327 F.3d 938, 967 (9th Cir. 2003) ("the common fund doctrine permits the court to award attorneys' fees from monetary payments that the prevailing party recovered.").

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) (encouraging courts "to guard against an unreasonable result by cross-checking their calculations against a second method."). Where the percentage-of-recovery method is employed, it is well established that 25 percent of the common fund is the "benchmark" award of attorney's fees. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 965). The Court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *Id.* at 941–42.

Whether the Court utilizes the 25 percent benchmark amount or some other rate, the award

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The Ninth Circuit has identified five factors that may inform this inquiry: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Id.* at 1048–50.

Class Counsel respectfully submit that the requested fee award of 25 percent of the Settlement Fund, or $56,250, is reasonable under the percentage of recovery methodology, and have provided the Court with sufficient detail herein to perform a lodestar calculation crosscheck which further supports that finding.  Defendants have taken no position regarding Class Counsel's application for attorneys' fees and expenses.  SA, ¶ 9.1.  As set forth below, the work Class Counsel has done here renders this fees award reasonable and warranted.

**B.      The Award Request is Supported by the Percentage-of-Recovery Method**

The nature of this action warrants application of percentage-of-the-fund approach, the principal and "prevailing practice in the Ninth Circuit," to determine the reasonableness of Class Counsel's fee request. *Korean Air Lines Co., Ltd. Antitrust Litig*., No. CV 07-05107 SJO AGRX, 2013 U.S. Dist. LEXIS 186262, at *3 (C.D. Cal. Dec. 23, 2013).  As courts recognize, this method "is commonly used in the legal marketplace to determine attorneys' fees in contingency fee cases."  *In re Anthem, Inc. Data Breach Litig*., No. 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137, at *83-84 (N.D. Cal. Aug. 17, 2018).  Where the "benefit to the class is easily quantified in common-fund settlements," district courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."  *Thomas v. MagnaChip Semiconductor Corp*., No. 14-CV-01160-JST, 2018 U.S. Dist. LEXIS 82801, at *10 (N.D. Cal. May 15, 2018) (citing *Bluetooth*, 654 F.3d at 942).

Other considerations also command using the percentage approach here, including (1) replicating more accurately the manner that plaintiffs' lawyers practice outside of the class action context, (2) ensuring that class counsel's interests are more directly aligned with the interests of the class, (3) rewarding counsel for assuming the risks of litigating a matter, and (4) avoiding the

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

trappings often associated with the lodestar method, such as encouraging counsel to bill time and to find reasons to do so. *See Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx), 2015 U.S. Dist. LEXIS 98546, at *34 (C.D. Cal. July 27, 2015); 5 Newberg on Class Actions §§ 15:62, 15:65 (5th ed. 2018*); see also In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *83-84; *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT, 2020 U.S. Dist. 118209, at *250 (N.D. Ga. March 17, 2020).

Class Counsel seeks an award of 25 percent, a percentage value directly on par with the Ninth Circuit's well-established benchmark of 25 percent and previous awards in data breach cases. *See Vizcaino*, 290 F.3d at 1047 (affirming fee award based on 28 percent of $95 million cash settlement fund, and analyzing percentage-based fee awards between 1996 and 2001 in large common fund cases); *In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *86.  As shown below, this percentage is reasonable under the relevant factors, and falls in line with the actual percentage fee awards in this District.

In assessing the reasonableness of the percentage of recovery method, courts look to "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 U.S. Dist. LEXIS 69797, at *33 (N.D. Cal. Apr. 24, 2019) (citing *Vizcaino*, 290 F.3d at 1050-51); *see also In re Nexus 6P Prods. Liab. Litig.*, No. 17- cv-02185-BLF, 2019 U.S. Dist. LEXIS 197733, at *24 (N.D. Cal. Nov. 12, 2019) (same).  Careful consideration of each of these factors supports the conclusion that an award of the benchmark fee percentage of 25 percent is warranted.

### 1.   The Results Achieved Here

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  It is readily apparent that there were substantial risks to achieving a recovery had the settlement not been reached at this point in the proceedings, especially considering Defendants had moved to dismiss and Plaintiff had not moved for class certification. *See* Joint Decl., ¶ 19.

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

Additionally, the fact that this data breach took place five years ago, and the dearth of direct precedent certifying data breach cases as class actions, created a substantial risk of achieving no recovery had the settlement not been reached.  *See* Joint Decl., ¶ 22.

In light of these facts, the Settlement affords the class relief which meets the potential impact of the breach to Class Members—monetary benefits carefully negotiated by Class Counsel to definitively right the wrongs underlying this action.  An insurance company that specializes in data breaches, and publishes a regular newsletter on data breach legal issues and trends, wrote: "[D]efendants are unlikely to pay anywhere close to $1 per class member to settle an action brought by a class on behalf of 100 million potentially affected individuals."[3]  Yet, in this case, Defendants have agreed to pay $2.69 per Settlement Class Member. This exceeds the value per class member of other data breach settlements.  *See, e.g.*, *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, 2016 U.S. Dist. LEXIS 200113 (N.D. Ga. Aug. 23, 2016) (cash value of $28.4 million for approximately 52 million impacted consumers, with alleged data exfiltration); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 U.S. Dist. LEXIS 75455 (D. Minn. May 17, 2017) (cash value of $23.3 million for approximately 110 million impacted consumers, with alleged data exfiltration); *In re Equifax*, 2020 U.S. Dist. LEXIS 118209 ($380.5 million for approximately 147 million impacted consumers, with alleged data exfiltration); *In re Anthem*, 2018 U.S. Dist. LEXIS 140137 (cash value of $115 million for approximately 79 million impacted consumers, with alleged data exfiltration); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020) (cash value of $117.5 million for approximately 194 million impacted consumers, with alleged data exfiltration).  Settlement Class Members will have the opportunity to claim either up to $50 for a Basic Award or up to $2,500 for a Reimbursement Award, subject to proration if there are insufficient funds to pay these amounts based on the number of claimants.

---

[3] Marcello Antonucci, *et al*., *Post-Spokeo, Data Breach Defendants Can't Get Spooked – They Should Stand Up To The Class Action Plaintiff Bogeyman*, BEAZLEY BREACH INSIGHTS (Oct. 27, 2016), https://www.beazley.com/documents/Insights/201610-data-breach-class-actionsettlements.pdf.

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

These amounts, however, may be increased by up to double if there are sufficient funds to do so.  Based upon the estimations of the Settlement Administrator, it is likely that the average award to Settlement Class Members who file valid claims will be approximately $47.00. *See* ECF No. 48.4, Exhibit B.  The non-monetary benefits also serve to provide improved security for Class Members, whose PII remains in Bombas' possession.  This is a fair and just outcome where the parties devoted financial resources to early resolution to benefit Class Members, instead of increasing Defendants' costs by litigating the issues described.  Class Counsel believe this is a solid result providing substantial benefit to the Settlement Class, thus supporting the requested fee award.

### 2.       The Risk and Nature of the Litigation

"The law in data breach litigation remains uncertain and the applicable legal principles have continued to evolve . . . ." *In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *240. In this case, the action settled before Plaintiffs moved for class certification, a high-stakes endeavor, inherently fraught with risks and bearing enormous consequences, especially in the nascent legal landscape of data breach litigation.  All cases, including this one, are subject to substantial risk.  This case involves thousands of individuals, and a complicated and technical factual overlay lodged against well-funded and motivated defendants. The damages methodologies, while theoretically sound in Plaintiff's view, remain largely untested in a disputed class certification setting and unproven in front of a jury. And—as in any data breach, but especially one of this scope and age—establishing causation and damages on a class-wide basis is an unexplored legal frontier rife with uncertainty.

Although nearly all class actions involve a high level of risk, expense, and complexity— undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class in an especially risky area. Historically, data breach cases have faced substantial hurdles in making it past the pleading stage. *See, e.g.*, *Antman v. Uber Technologies, Inc.,* No. 3:15-cv-01175, 2015 U.S. Dist. LEXIS 141945, at *29 (N.D. Cal. Oct. 19, 2015) (holding that the risk that plaintiff's identity could be stolen was

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

insufficient to confer standing based on a data breach exposing plaintiff's name and driver's license number); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of personal information and allegations of a heightened risk of identity theft, without more, calls standing into question); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases and noting that "every court to [analyze data breach cases] has ultimately dismissed under Rule 12(b)(6) . . . or under Rule 56 following the submission of a motion for summary judgment"); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, at *25-26 (W.D. Ky. Aug. 20, 2010) (approving a data breach settlement in part because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").

Success at class certification has also been mostly nonexistent in these cases, recently resulting, in this District, in success for only an injunctive class.[4]  Even if this Court had denied Defendants' motions to dismiss and granted in full Plaintiff's anticipated motion for class certification, the inherent risks attendant to trying a data breach class action involving only payment cards would have magnified the difficult legal questions at issue here, principally, the damages theories.  *See, e.g.*, *In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *12 ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *191.  Although Plaintiff believes he would have prevailed in this action, a defense verdict was entirely possible.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged; particularly in the area of damages for breaches involving only payment cards. Data breach cases generally present risk and uncertainty,

---

[4] *See Adkins v. Facebook*, No. C 18-05982 WHA, 2019 U.S. Dist. LEXIS 206271, *691 (N.D. Cal. Nov. 26, 2019) (granting motion to certify injunctive-only class, but denying motion to certify damages and issues classes in data breach class action); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach action); *In re TJX Companies Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (same).

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

1     making settlement the more prudent course when a reasonable deal is available. By settling and

2     paying Class Members now, practical remedies that have been absent become imminently

3     available.  Even if Plaintiff achieved a successful judgment, relief to Class Members would likely

4     be forestalled for years following the exhaustion of appeals. Here then, delay only further delays

5     compensation to Class Members they rightly deserve.

6             **3.       The Skill Required to Prosecute this Action Effectively**

7          Class Counsel's skill and experience in complex class action litigation (having served as

8     lead counsel in complex class actions for nearly five decades) also favor the requested fee award

9     here.  The descriptions of the backgrounds and experience of Class Counsel demonstrate that

10    Class Counsel are experts in the highly specialized field of class action litigation, well

11    credentialed, and equal to the difficult and novel tasks at hand.  *See* Declaration of M. Anderson

12    Berry ("Berry Decl."), ¶ 7; and the Declaration of John A. Yanchunis ("Yanchunis Decl."), ¶¶ 4-

13    8. Class Counsel's fee request is commensurate with that experience, which they were able to

14    leverage to procure the settlement. The skill demonstrated by Class Counsel in developing the

15    Complaint, mediating the case and settling the action early further supports the fees requested.

16    *See Vizcaino*, 290 F.3d at 1050 n.5 (noting that early resolution may be a relevant factor).

17         They were also equal to the experience and skill of the lawyers representing Defendants,

18    a factor to be considered here.  *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV-1006352

19    MMM (JCGx) 2014 Dist. LEXIS 184548, at *72 (C.D. Cal. July 28, 2014) ("In addition to the

20    difficulty of the legal and factual issues raised, the court should also consider the quality of

21    opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing*

22    *v. Asarco Inc*., 114 F.3d 986, 989 (9th Cir. 1997)). Defendants were represented in this case by

23    highly respected law firms, Ropes & Gray LLP and Gibson Dunn & Crutcher LLP, with

24    significant resources and substantial experience defending consumer class actions. This factor,

25    therefore, weighs in favor of the requested fee award.

26

27

28

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE
REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
SUPPORT THEREOF

### 4. Awards in Similar Cases

The requested fee percentage of 25 percent is reasonable when compared to reported data breach class action fee orders in the Northern District of California. *See In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at \*119-20 (awarding $31.05 million in attorneys' fees or "27% [of the] $115 million Settlement Fund."); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (awarding attorneys' fees of 25 percent of the settlement fund, or $312,500); *In re Hanna Andersson and Salesforce.com Data Breach Litigation*, No. 3:20-cv-00812-EMC, ¶ 12 (N.D. Cal. June 25, 2021) (ECF No. 75) (awarding attorneys' fees of 25 percent of the settlement fund, or $100,000).

### C. The Fee Request Is Reasonable Under the Lodestar Cross-Check

Where the use of lodestar method is used as a cross-check, it can be performed with a less exhaustive review and analysis of hours. *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 U.S. Dist. LEXIS 169764, at \*52 (N.D. Cal. Sept. 21, 2018) (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award."). Courts apply similar factors to those under the percentage of recovery method to support awards under the lodestar calculation. *Perez v. Rash Curtis & Associates*, 2020 U.S. Dist. LEXIS 68161, at \*61-62 (N.D. Cal. April 17, 2020) (citations and marks omitted) (factors include: "(i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.") As set forth above, each of these factors weigh heavily in favor of the conclusion that the fee request of $56,250 (below lodestar) is reasonable, particularly given that Class Counsel expended over 300.3 hours in prosecuting this action with a total lodestar of $156,147.90 – a negative 0.36 multiplier when applying Class Counsel's usual and customary rates. *See* Joint Decl., ¶ 27. *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM), 2010

13

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

1    U.S. Dist. LEXIS 119702, at *77 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a
2    percentage fee representing a significant discount from their lodestar provides additional support
3    for the reasonableness of the fee request.").[5]

4         Moreover, in assessing fee applications, the reasonable hourly rates are calculated
5    according to the prevailing market rates in the relevant legal community. *Gonzalez v. City of*
6    *Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013).  Here, the hourly rates for Class Counsel are
7    reasonable for the community and comparable to similar services by lawyers of reasonably
8    comparable skill, experience, and reputation.  *See In re Equifax*, 2020 U.S. Dist. LEXIS 118209,
9    *259 (finding as reasonable attorneys rates ranging up to $935 per hour). Indeed, Class Counsel
10   have been approved at the billing rates they seek in this case. *See, e.g.*, *In re Yahoo!*, 2020 U.S.
11   Dist. LEXIS 129939, *102 (approving rates for paralegals and attorneys ranging between $190
12   and $975 per hour); *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, * 32 (E.D.
13   Pa. Sept. 24, 2019) (same; $202 and $975 per hour); *DeFrees v. Kirkland*, No. CV 11-4272 GAF
14   (SPx), 2014 U.S. Dist. LEXIS 157320, at *2 (C.D. Cal. Nov. 4, 2014) ("the Court finds the fees
15   and costs appear to be reasonable"); *Carter v. Hot Topic, Inc*., No. 2:13-cv-04153-SJO (JCx), slip
16   op., ECF No. 9 (C.D. Cal. Apr. 13, 2016) (awarding requested fees); *In re Hanna Andersson and*
17   *Salesforce.com Data Breach Litigation*, No. 3:20-cv-00812-EMC, ¶ 12 (N.D. Cal. June 25, 2021)
18   (ECF No. 75) (awarding requested fees from Class Counsel in this matter).

19        The hours expended are also reasonable. In considering the reasonable of hours, "[b]y and
20   large, the court should defer to the winning lawyer's professional judgment as to how much time
21   he was required to spend on the case; after all, he won, and might not have, had he been more of
22   a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). To date, Class

23

24   _____
     [5] Indeed, as the Ninth Circuit has recognized, attorneys in common fund cases are frequently
25   awarded a multiple of their lodestar, which rewards them "for taking the risk of nonpayment by
     paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*,
26   290 F.3d at 1051.  It is common for courts to enhance the lodestar in complex litigation by
     multipliers between 3 and 4.5, and many courts have awarded higher multipliers. *See, e.g., id*. at
27   1051 n.6 (finding multiples ranged as high as 19.6, but most from 1 to 4).

28                                                    14
     PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE
     REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
     SUPPORT THEREOF

Counsel have expended 300.3 hours litigating this matter to the benefit of the Class. *See* Berry Decl., ¶ 20; Yanchunis Decl., ¶ 12.  This time included investigating and bringing this case upon the announcement of the Data Breach; drafting the complaint and opposing the motions to dismiss from both defendants; conducting informal discovery; preparing for and attending mediation; obtaining post-mediation information; negotiating a complex Settlement Agreement; soliciting bids for and investigating potential notice and claims administrators and their respective plans; moving for and successfully obtaining preliminary approval; working in concert with the Settlement Administrator; monitoring the Notice Program and claims administration; and drafting this Motion. Joint Decl., ¶ 25; Berry Decl., ¶¶ 11-14; Yanchunis Decl., ¶17.

Finally, Class Counsel took this case on a pure contingency basis without any form of litigation funding or outside funding; the litigation was entirely self-funded for the benefit of the Class.  The attorneys working on the case have foregone the ability to devote time to other cases and faced a substantial risk that the litigation would yield no or very little recovery and leave them uncompensated for their time and out-of-pocket expenses.  Given the fact that few contested classes have been certified in consumer data breach class actions, there can be no question that the risk of nonpayment was substantial. While Plaintiffs may have succeeded at the trial court level in defeating a motion to dismiss, defeating a motion for summary judgment, and certifying a damages-based class, the passage of time and delay in delivering benefits to Class Members would have been protracted, and any appellate processes would have further prolonged the delivery of those benefits. No stage of the proceedings is guaranteed, and with the highlighted hurdles of overcoming the motion to dismiss and achieving contested certification in this case, it is plainly clear that Class Members may not have recovered any monetary benefits and the Class Members' PII in Defendants' possession may have continued to be at risk without this litigation. Instead, Class Members will receive compensation that the Court ruled fairly and adequately compensates Class Members in considering preliminary approval of the Settlement. ECF No. 51 at ¶ 2.

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

In addition, Class Counsel's responsibility for this case is far from over. Class Counsel necessarily must continue to work with the Settlement Administrator, review and respond to objections, move for final approval, handle appeals, and oversee the final administration of benefits to Class Members. Given the foregoing, Class Counsel's fee request of $56,250 is eminently reasonable.

## IV.     CLASS COUNSEL'S REASONABLE EXPENSES SHOULD BE REIMBURSED

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted). Such expense awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

Class Counsel have incurred expenses in the prosecution of this Action in the total amount of $8,022.97. Class Counsel provide a breakdown of the unreimbursed expenses necessarily incurred by counsel in this case. *See* Berry Decl., ¶ 22; Yanchunis Decl., ¶ 21. For example, Class Counsel seeks reimbursement for court costs, legal research, client costs, postage, service of process, and mediator fees. These are standard expenses incurred in prosecuting a civil lawsuit and are the type of expenses typically billed by attorneys to paying clients in the marketplace. As with the lodestar, all expenses were carefully scrutinized. *See* Berry Decl., ¶ 19; Yanchunis Decl., ¶ 14. These expenses are in line with those approved by courts in this District and are all the type of expenses routinely charged to hourly paying clients. *See, e.g., In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 U.S. Dist. LEXIS 163500, at *15 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying expenses were reasonable and recoverable); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *58-59 (N.D. Cal. Sept. 2, 2015). The request for litigation costs and expenses is reasonable here.

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

## V.   REQUEST FOR PLAINTIFF SERVICE AWARD

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted). Service awards of $5,000 are "presumptively reasonable" in this District. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015).

The Court should approve the modest service award here of $1,000 to Representative Plaintiff Pygin.  As described in the Declaration of Alex Pygin in Support of Plaintiff's Motion for Approval of Attorneys' Fees Award, Expense Reimbursement, and Service Award to Representative Plaintiff ("Pygin Decl."), the Representative Plaintiff spent considerable time throughout the litigation fulfilling the responsibilities as plaintiff and class representative.  Pygin Decl., ¶ 7.  The amounts requested here comport with the Ninth Circuit's benchmark.  *See e.g., In re Hanna Andersson and Salesforce.com Data Breach Litigation*, No. 3:20-cv-00812-EMC, ¶ 13 (N.D. Cal. June 25, 2021) (ECF No. 75) (finding $2,500 justifiable); *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947 (finding $5,000 reasonable); *In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *171 (same).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the instant motion for entry of an Order approving Class Counsel's request for: (i) an attorneys' fees award in the amount of 25 percent of the Settlement Fund, or $56,250; (ii) reimbursement of $8,022.97 in expenses; and (iii) payment of service award of $1,000 to Representative Plaintiff.


DATED:  September 3, 2021                    Respectfully Submitted,


                              By:      */s/ M. Anderson Berry*

                                   M. ANDERSON BERRY
                                   aberry@justice4you.com
                                   ALEX SAUERWEIN
                                   asauerwein@justice4you.com
                                   **CLAYEO C. ARNOLD,**

17

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN SUPPORT THEREOF

1

**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Cellular: (415) 595-3302
Facsimile: (916) 924-1829

JOHN A. YANCHUNIS (*Pro Hac Vice*)
jyanchunis@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

*Attorneys for Plaintiff*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTF'S NTC OF MTN AND MTN FOR APPROVAL OF ATTORNEY'S FEES AWARD, EXPENSE
REIMBURSEMENT AND SERVICE AWARD TO REP. PLTF; MEMO OF P'S AND A'S IN
SUPPORT THEREOF