M. ANDERSON BERRY (262879)
aberry@justice4you.com
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

JOHN A. YANCHUNIS (*Pro Hac Vice*)
jyanchunis@ForThe People.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ALEX PYGIN, an individual and California resident, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>BOMBAS, LLC, SHOPIFY (USA) INC. and SHOPIFY, INC.,<br><br>Defendants. | Case No.: 4:20-cv-04412-JSW<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DATE:** November 19, 2021<br>**TIME:** 9:00 a.m.<br>**COURT:** 5, 2nd Floor<br>**JUDGE:** Hon. Jeffrey S. White |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 19, 2021, at 9:00 a.m., in Courtroom 5 of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California, 94612, the Honorable Jeffrey S. White, presiding, Plaintiff will and hereby moves for an Order for final approval of the Settlement and certification of the Settlement Class for purposes of this Settlement pursuant to Rules 23(e) and 23(b)(3) of the Federal Rules of Civil Procedure ("Rule(s)").[1]

In so moving, Plaintiff respectfully requests the Court: (1) approve the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiff as Class Representatives for the Settlement Class; (4) finally appoint as Settlement Class Counsel John A. Yanchunis and M. Anderson Berry; and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of John A. Yanchunis and M. Anderson Berry ("Final App. Joint Decl.") and all exhibits attached thereto, pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement, attached as Exhibit 1 to the Joint Declaration of John A. Yanchunis and M. Anderson Berry in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, filed May 20, 2021 ("Prelim. App. Joint Decl.") (ECF No. 48-3).

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 3

        A.      Information About the Settlement ........................................................... 3

                1.      Business Practice Changes ........................................................... 4

                2.      The Settlement Relief to Class Members .................................... 4

                3.      Release of Claims ......................................................................... 5

        B.      Notice Implementation ........................................................................... 6

        C.      Claims Experience ................................................................................. 9

III.    ARGUMENT ...................................................................................................... 9

        A.The Court Should Certify the Settlement Class .............................................. 9

        B.      The Settlement Merits Final Approval ................................................. 10

                1.      Adequacy of Relief: Costs, Risks, and Delay ........................... 10

                2.      Adequacy of Relief: The Amount Offered in Settlement .......... 13

                3.      Adequacy of Relief:  Attorneys' Fees ....................................... 13

        C.      The District's Procedural Guidance ...................................................... 14

        D.      The Notice Program Met the Requirements of Due Process ................ 15

        E.      Final Appointment of Settlement Class Counsel ................................. 16

        F.      Ninth Circuit Final Approval Factors .................................................. 17

                1.      The Presence of a Government Participant ................................. 17

                2.      The Reaction of the Class Members to the Settlement .............. 17

        G.      Schedule for Post-Distribution Accounting ......................................... 17

IV.     CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Altamirano v. Shaw Indus., Inc.*,
   No. 13-CV-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015)................................14

*Chambers v. Whirlpool Corp.*,
   214 F. Supp. 3d 877 (C.D. Cal. 2016) ....................................................................................9

*G.F. v. Contra Costa Cty.*,
   No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015)................................14

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS
   71996 (S.D.N.Y. June 25, 2010)............................................................................................11

*Hughes v. Microsoft Corp.*,
   No. 98-CV-01646, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ..................................15

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)............................................................................................15

*In re Apollo Grp. Inc. Sec. Litig.*,
   No. 04-2147, 2012 WL 1378677 (D. Ariz. 2012)....................................................................9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................................17

*In re Brinker Data Incident Litig.*,
   No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021).......................13

*Linney v. Cellular   Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)...................................................................................................11

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)...................................................................................................................15

*Smith v. Triad of Ala.*, LLC,
   No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) .........13

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ("*Spann I*").......................................................................12

# STATUTES

Cal. Bus. & Prof. Code § 17200, *et seq.* ............................................................... 11,12

Cal. Civ. Code § 1542 ................................................................................................. 6


# RULES

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 11

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 11

Fed. R. Civ. P. 23 ............................................................................................... 3,9,16-18

Fed. R. Civ. P. 23(a) ................................................................................................. 9

Fed. R. Civ. P. 23(b) ................................................................................................. 2,9

Fed. R. Civ. P. 23(b)(3) ................................................................................... 1,2,15,18

Fed. R. Civ. P. 23(c)(2)(b) ................................................................................... 6,7,15

Fed. R. Civ. P. 23(e) ........................................................................................ 1,2,9,18

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 2,10

Fed. R. Civ. P. 23(e)(3) ....................................................................................... 10,13

Fed. R. Civ. P. 23(g) ................................................................................................. 16

Fed. R. Civ. P. 23(g)(1)(b) ...................................................................................... 16

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ......................................................................... 16


# OTHER AUTHORITIES

N.D. Cal., *Procedural Guidance for Class Action Settlements* (Dec. 5, 2018) ...................... 10,14

NOT. AND MEM. OF Ps & As ISO PLTF'S UNOPPOSED
MOT. FOR FINAL APPOVAL OF SETTLEMENT
No. 4:20-cv-04412-JSW

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

On July 12, 2021 this Court granted the motion of Plaintiff Alex Pygin ("Plaintiff") for

3  Preliminary Approval of Class Action Settlement (the "Preliminary Approval Motion," ECF No.

4  48).  *See* ECF No. 51.  Plaintiff now moves this Court for Final Approval of the Class Action

5  Settlement.  Defendants do not oppose this motion.

6  **I.  INTRODUCTION**

7

This data breach class action alleges that one or more unauthorized third parties breached

8  the security of the e-commerce platform of Bombas LLC ("Bombas") and obtained certain of

9  Bombas customers' Personal Information ("PII"), including payment card information (the

10  "Security Incident").  Plaintiff initiated this action against Bombas, Shopify (USA) Inc., and

11  Shopify Inc. ("Shopify") (collectively, "Defendants").

12

Following the filing of the class action Complaint (ECF No. 1) and briefing of Defendants'

13  Motions to Dismiss (ECF Nos. 36-42), the Parties exchanged informal discovery and engaged in

14  a day-long mediation session.  After the arms-length mediation conducted by JAMS mediator

15  Martin Quinn, Esq., the Parties negotiated the terms of the Settlement Agreement and Release,

16  dated May 20, 2021 (the "Settlement Agreement" or "SA"), and reached a resolution that resolves

17  all pending litigation and provides substantive relief to the approximately 83,000 Settlement Class

18  Members ("Class Members").

19

The Settlement is a beneficial resolution of this high-risk, complex litigation and provides

20  substantial monetary benefit to Class Members.  Through proposed Class Counsel's efforts,

21  Bombas has created a non-reversionary Settlement Fund of $225,000.00 which shall pay for:  (1)

22  all payments of valid claims submitted by Settlement Class Members; (2) the costs of claims

23  administration; (3) attorneys' fees and costs to be determined by the Court; and (4) Class

24  Representative   Plaintiff's   Service   Award.   *See*   ECF   No.   48-4   (SA),

25  §§ 1.38-40, 2.1.

26

Settlement Class Members had the option of claiming a cash payment of up to $50 for a

27

28

1   Basic Award or of up to $2,500 for a Reimbursement Award.  *Id.*, §§ 2.2.1, 2.2.2.  If there are
2   insufficient funds to pay these amounts based on the number of claimants, the payment to each
3   claimant will be reduced *pro rata*.  *Id.*, § 7.3.2.  Any funds remaining in the Settlement Fund after
4   distributions to Class Members will be distributed to a *cy pres* recipient, selected by the parties
5   with approval from by Court.  *Id.*, § 7.6.

6          In addition, to provide additional protection to its customers' information going forward,
7   Bombas has agreed to take extensive and costly steps to enhance the security of the e-commerce
8   platform through which it processes payment card transactions.  Among other things, Bombas
9   has agreed to: (a) create and implement a Written Information Security Policy ("WISP") that
10  follows applicable state cybersecurity requirements; (b) annually train employees on the WISP
11  and related data protection topics; (c) implement a strong password policy to the extent technically
12  feasible for systems that allow access to personal information; and (d) implement multi-factor
13  authentication for the ecommerce platform and elsewhere to the extent technically feasible for
14  systems that allow access to Personal Information.  *See Id.*, § 2.5.  Together, the Settlement and
15  the corrective measures Bombas is taking, and will continue to take, provide Settlement Class
16  Members with both improved security of their PII, and compensation for the damages they may
17  have sustained as a result of the Security Incident.

18         This class action satisfies the requirements of Federal Rule of Civil Procedure 23(b) for
19  the purposes of settlement and therefore the Settlement Class should be certified.  Moreover, the
20  factors set forth by the Ninth Circuit and in Federal Rule of Civil Procedure 23(e)(2) weigh
21  strongly in favor of approval of the Settlement, and no Settlement Class Member has filed a timely
22  objection to the Settlement.  The Court should therefore grant the Settlement final approval.

23         Accordingly, Plaintiff respectfully requests the Court: (1) approve the Settlement
24  Agreement as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement
25  Class under Rule 23(b)(3); (3) finally appoint Plaintiff as Class Representative for the Settlement

1   Class; (4) finally appoint as Settlement Class Counsel John A. Yanchunis and M. Anderson Berry;

2   and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

3   **II.   STATEMENT OF FACTS**

4       **A.   Information About the Settlement[2]**

5       The Parties agreed on and retained JAMS mediator Martin Quinn, Esq., and exchanged

6   informal discovery and briefed their respective positions on the facts, claims, defenses, and

7   assessments of the risks of litigation.  Final App. Joint Decl., ¶ 6.

8       On February 12, 2021, the parties participated in a full-day mediation session with Mr.

9   Quinn. *Id*., ¶ 5. The negotiations were hard-fought throughout and the settlement process was

10  conducted at arm's-length. *Id*., ¶ 8. Through the negotiations, Mr. Quinn was able to assist the

11  parties in reaching an agreement on the substantive terms of the Settlement. *Id*. The subject of

12  attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all

13  substantive terms of the Settlement were agreed upon by the parties. *Id*., ¶ 9.

14      The Parties agreed in principle to the terms of a Settlement that day and thereafter

15  negotiated the terms of the final Settlement Agreement over the subsequent three months. The

16  Settlement Agreement was executed by all Parties on May 20, 2021, and this Court granted

17  preliminary approval on July 12, 2021. ECF No. 51.

18      Based on proposed Class Counsel's independent investigation of the relevant facts and

19  applicable law, experience with many other data breach cases, including data breach cases in this

20  District, and the information provided by Defendants, proposed Class Counsel has determined

21  that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.

22  Final App. Joint Decl., ¶ 10.  Consequently, the Parties worked together to prepare a

23  comprehensive set of Settlement documents, which are embodied in the Settlement Agreement.

24  ECF No. 48-4.

25

26  ---

26  [2] The factual and procedural history is set out in detail in Plaintiff's Motion for Approval of

27  Attorneys' Fees Award, Expense Reimbursement, and Service Awards to Representative
    Plaintiff. ECF No. 52, at 3-5.

28  NOT. & MEM. OF Ps & As ISO PLTF'S UNOPPOSED
    MOT. FOR FINAL APPOVAL OF SETTLEMENT
    No. 4:20-cv-04412-JSW

1    The Settlement will provide relief for the following Settlement Class: "All individuals

2  residing in the United States who made purchases from the Bombas website from November 11,

3  2016 through February 16, 2017 and received notice from Bombas concerning the Security

4  Incident on or about June 3, 2020."   The Settlement Class contains approximately 83,000

5  individuals.  ECF No. 48-3 (Prelim. App. Joint Decl.), ¶ 11.  The Settlement Class is the same in

6  substance as the Nationwide Class defined in the Complaint: "All individuals whose PII was

7  compromised in the data breach announced by Bombas on June 3, 2020."  ECF No. 1, ¶ 60.[3]

8                    **1.     Business Practice Changes**

9    As part of the Settlement, Bombas has agreed to ensure that it takes the following

10  reasonable steps to enhance the security of the e-commerce platform through which it processes

11  payment card transactions:

12            a.       Create and implement a Written Information Security Policy ("WISP") that

13                     follows applicable state cybersecurity requirements;

14            b.       Annually train employees on the WISP and related data protection topics;

15            c.       Implement a strong password policy to the extent technically feasible for systems

16                     that allow access to personal information; and

17            d.       Implement multi-factor authentication for the ecommerce platform and elsewhere

18                     to the extent technically feasible for systems that allow access to Personal

19                     Information.

20  S.A., § 2.5.

21    These changes will benefit those members of the Settlement Class to the extent any of

22  their information remains in Bombas's possession, and also other customers who make purchases

23  from Bombas in the future. Prelim. App. Joint Decl., ¶ 29. ECF No. 48-3.

24                    **2.     The Settlement Relief to Class Members**

25    Bombas created a Settlement Fund in the amount of $225,000.00, which will be used to

26  ───────────────

27  [3] The California subclasses are subsumed within the Nationwide Class and also the Settlement Class.  *Id*., ¶¶ 60-63.

28

make payments to Settlement Class Members and to pay the costs of Claims Administration, any Attorneys' Fees and Expenses Award, and any Service Award. SA, §§ 1.40, 2.1. Bombas paid the full amount of $225,000.00 of the Settlement Fund to the Claims Administrator on July 20, 2021. Declaration of Settlement Administrator ("Angeion Decl."), ¶ 16; *see* SA, § 7.4.

Eligible Class Members may receive: (1) a "Basic Award" of up to $50.00, regardless of whether or not he or she experienced any fraudulent or unauthorized charges, or identity theft, as a result of the Security Incident; or (2) a "Reimbursement Award" of up to $2,500 for up to three hours of lost time in dealing with unauthorized charges as well as reimbursement for unauthorized charges and out-of-pocket expenses related to the Security Incident, subject to proration if there are insufficient funds to pay these amounts based on the number of claimants. *Id.*, §§ 2.2.1, 2.2.2, 7.3.2. On the other hand, if the total dollar value of all Approved Claims at the payment rates is less than the amount remaining in the Settlement Fund after the Attorneys' Fees and Expenses Award, the Service Award, and the Claims Notice and Administration costs, the payment amount for all Approved Claims will be increased *pro rata* among all Settlement Class Members who submitted Approved Claims by up to a maximum of $100.00 for a Basic Award and $5,000.00 for a Reimbursement Award. *Id.*, § 7.3.1. Any funds remaining in the Settlement Fund after distributions to Class Members will be distributed to a *cy pres* recipient, selected by the parties with approval from by Court. *Id.*, § 7.6.

### 3.    Release of Claims

Upon entry of the Final Approval Order, Plaintiff and the Settlement Class will be deemed to have "completely and unconditionally released, forever discharged and acquitted the Released Persons from any and all of the Released Claims, and Representative Plaintiff will be deemed to have also released Unknown Claims." *Id.*, § 8.1. "Released Claims" means all claims, including but not limited to, any claim, liability, right, demand, suit, matter, obligation, damage, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action or every kind and description, whether in

law, in equity, for administrative relief, or otherwise, that the Releasing Persons had, have, or may in the future have, against Defendants and/or the Released Persons that result from, arise out of, are based upon, or related in any way to the Security Incident, including but not limited to any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) the alleged theft, exposure, or disclosure of Settlement Class Members' Personal Information; (2) the maintenance and storage of Settlement Class Members' Personal Information; (3) the Defendants' information security policies and practices; and (4) Bombas's notice of the Security Incident to Settlement Class Members. *Id.*, § 1.28.  Therefore, Plaintiff and the Class are releasing only those claims alleged in the Complaint, or that could have been alleged based upon the facts alleged in the Complaint.

In addition, the Representative Plaintiff and, by operation of a Final Approval Order and Judgment, each Settlement Class Member, is deemed to have waived (i) the provisions of California Civil Code  § 1542, which provides that a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or releasing party, and (ii) any law of any state or territory of the United States that is similar, comparable, or equivalent to California Civil Code § 1542.  *Id.*, § 1.42.

### B.     Notice Implementation

The Notice Program was implemented as set out in the Settlement Agreement and as directed by the Court.

On May 28, 2021, pursuant to 28 U.S.C. § 1715, Defendants caused the CAFA Notice to be sent to the Attorneys General of all U.S. States and Territories as well as the Attorney General of the United States (the "CAFA Notice").  Final App. Joint Decl., ¶ 13.

The notice issued to the Settlement Class was the "best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(b); Angeion Decl., ¶ 17.  In its Preliminary Approval

Order, the Court approved the Notice Program set forth in the Settlement Agreement. Notice was given to the Settlement Class via email, by posting a long-form notice (attached to the Settlement Agreement as Exhibit B) on a dedicated Settlement website (www.Bombassettlement.com) ("Settlement Website"), along with other important documents. *Id.*, ¶ 9.  The notice documents are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out of or object to the Settlement.  Fed. R. Civ. P. 23(c)(2)(B).  Postcard Notice was sent via United States Postal Service ("USPS") first class mail to impacted persons whose email addresses were invalid or returned to Angeion as hard bounces. *Id.*, ¶ 7. Furthermore, a toll-free number with interactive voice recognition, FAQs, and an option to speak to a live operator has also been made available to address Settlement Class Members' inquiries. *S.A.*, § 4.2.2; Angeion Decl., ¶11.

Due to the nature of Bombas's business, Bombas has email addresses for all Settlement Class Members, and individual notice was given primarily by emailing the Summary Notice (attached to the Settlement Agreement as Exhibit C) to the email addresses associated with the accounts of Bombas's customers in the United States who made purchases from Bombas's website during the Class Period.  Final App. Joint Decl., ¶ 12.

On July 23, 2021, counsel for Bombas provided Angeion with a Class List that included 82,615 records with names and email addresses.  Angeion analyzed and de-duplicated the Class List records.  Angeion Decl., ¶ 5.  Angeion identified 82,615 unique Class Members. *Id*. Angeion processed the Class List using an email address validation process whereby Angeion identified 77,888 valid email addresses.  *Id*.

On August 8, 2021, Angeion initiated the email notice program resulting in the dissemination of 77,888 Summary Notices (the "Email Notice"). *Id.*, ¶ 6.  The Email Notice included a direct link to the Settlement Website.  *Id.*, ¶ 6 and Ex. A.  Of the 77,888 emails sent, 1,552 were returned as a hard bounces.  *Id*.

On August 18, 2021, Angeion caused the Postcard Notice to be sent via USPS first class

1    mail to 4,715 records that either had an invalid email address or where the email was returned as

2    a hard bounce. *Id.*, ¶ 7. These 4,715 records were processed through the USPS National Change

3    of Address ("NCOA") database to identify updated address information for individuals and

4    businesses who have moved in the last four years and filed a change of address card with the

5    USPS. *Id.* The NCOA results provided 440 updated addresses for the Settlement Class Members.

6    *Id.* Angeion Updated the class list with these updated addresses. *Id.*, ¶ 7 & Ex. B.

7          As of October 14, 2021, a total of 73 of the initial 440 Postcard Notices mailed were

8    returned by the USPS as undeliverable without a forwarding address. Id., ¶ 8. Sixty-nine of the

9    73 undeliverable notices were processed through address verifications searches, and of the 69

10   records subjected to a skip trace, a new address was located for 46. *Id.* Angeion updated the Class

11   Member database and has re-mailed Postcard Notices to the 46 class members located via this

12   process; Angeion will continue to skip trace any notices returned as undeliverable up to the

13   November 9, 2021 deadline. *Id.*

14         On August 10, 2021, Angeion established the following website devoted to this

15   Settlement: www.BombasSettlement.com.   *Id.*, ¶ 9.   The Settlement Website allowed Class

16   Members to obtain basic information about the Settlement and to access the Settlement

17   Agreement and other documents related to the Settlement, including the Long Form Notice and

18   Claim Form. *Id.*   Class members were also allowed to submit their claims online via the online

19   claim portal on the Settlement Website. *Id.*   The Settlement Website also contains a "Contact Us"

20   page whereby Class Members can contact Angeion by sending an email to a dedicated email

21   address established for this Settlement: info@BombasSettlement.com. *Id.* As of October 14,

22   2021, the Settlement Website has had 29,791 page views and 12,705 sessions. *Id.*

23         On August 10, 2021, Angeion established the following toll-free hotline dedicated to this

24   Settlement: 1-844-963-2773. Angeion Decl., ¶ 11.   The toll-free number uses an interactive voice

25   response ("IVR") system to provide Class Members with responses to frequently asked questions

26   and inform Class Members of important dates and deadlines pertaining to the Settlement.

27

28

NOT. & MEM. OF Ps & As ISO PLTF'S UNOPPOSED
MOT. FOR FINAL APPOVAL OF SETTLEMENT
No. 4:20-cv-04412-JSW

1    Settlement Class Members also had the option to speak with a live operator or leave a message

2    requesting Settlement-related documents. *Id.*  The toll-free hotline is accessible 24 hours a day, 7

3    days a week.  *Id.*  As of October 14, 2021, the toll-free hotline has received 14 calls, totaling

4    approximately 60 minutes, and two voicemails.  *Id.*, ¶ 12.

5         **C.    Claims Experience**

6         The deadline for Settlement Class Members to submit a Claim Form is November 9, 2021.

7    *Id.*, ¶ 13.  As of October 14, 2021, Angeion has received 8,107 Claim Forms for the Basic Award

8    (8,020 via online, 87 via mail) and 715 Claim Forms for the Reimbursement Award (710 via

9    online, 5 via mail).  *Id.* Angeion will determine the number of valid claims by approximately

10   January 15, 2022, because the Class Members have until January 8, 2022, to cure any deficiencies.

11   *Id.*

12        The deadline for Settlement Class Members to request exclusion or object to the

13   Settlement was October 12, 2021. *Id.*, ¶ 14.  As of October 14, 2021, Angeion has not received

14   any requests for exclusion from the Settlement, and has not received any objections or comments

15   to the Settlement.  *Id.*, ¶¶ 14-15.

16   **III.   ARGUMENT**

17        **A.    The Court Should Certify the Settlement Class**

18        As the Court found at the preliminary approval stage, the Settlement Class is appropriate

19   for certification under Rule 23(a) and 23(b) in this settlement context. ECF No. 51, ¶¶ 4, 6.

20   Because no substantive changes have occurred since that finding, and no objections or other

21   arguments have been raised in opposition to a finding of certification, the Court's previous finding

22   should be made final here.  *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal.

23   2016) ("Because circumstances have not changed, and for the reasons set forth in its Order [. . .

24   ], the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).")

25   (citing *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-2147, 2012 WL 1378677, *4 (D. Ariz. 2012)

26   ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure,

27

28

NOT. & MEM. OF Ps & As ISO PLTF'S UNOPPOSED
MOT. FOR FINAL APPOVAL OF SETTLEMENT
No. 4:20-cv-04412-JSW

1  and hereby reconfirms its order certifying a class.")).

2  **B.  The Settlement Merits Final Approval**

3  Rule 23(e) requires judicial approval of the compromise of claims brought on a class basis.

4  Amended Rule 23(e) standardizes the factors governing final approval, stating that approval is

5  proper upon a finding that the Settlement is "fair, reasonable, and adequate" after considering

6  whether:

7  (A) the class representatives and class counsel have adequately represented the class;

8  (B) the proposal was negotiated at arm's length;

9  (C) the relief provided for the class is adequate, taking into account:

10  (i) the costs, risks, and delay of trial and appeal;

11  (ii) the effectiveness of any proposed method of distributing relief to the class,

12  including the method of processing class-member claims;

13  (iii) the terms of any proposed award of attorney's fees, including timing of

14  payment; and

15  (iv) any agreement required to be identified under Rule 23(e)(3); and

16  (D) the proposal treats class members equitably relative to each other.

17  Fed. R. Civ. P. 23(e)(2).

18  The applicable standard for preliminary approval also now incorporates these factors,

19  which Plaintiff analyzed at the preliminary-approval stage (ECF No. 48-1 at 12-22), along with

20  the Northern District of California's Procedural Guidance for Class Action Settlements' multiple

21  applicable criteria for preliminary approval and this Circuit's factors for final approval. *Id*.

22  Accordingly, Plaintiff incorporates by reference his previously submitted arguments and

23  analyses. To avoid further burdening the record, Plaintiff recaps highlights of those arguments

24  below and addresses any new matters that arose since that filing.

25  **1.  Adequacy of Relief: Costs, Risks, and Delay**

26  While Plaintiff believes his case is a strong one, all cases, including this one, are subject

27

28

1   to substantial risk. This case involves thousands of individuals, and a complicated and technical

2   factual overlay lodged against technologically savvy and motivated defendants. The damages

3   methodologies, theoretically sound in Plaintiff's view, remain untested in a disputed class

4   certification setting and unproven in front of a jury. And—as with any data breach or security

5   incident—establishing causation as to multiple defendants and damages on a class-wide basis is

6   an unexplored legal frontier rife with uncertainty.

7        Although nearly all class actions involve a high level of risk, expense, and complexity—

8   undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska*

9   *P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an especially

10   risky arena. Historically, data breach cases face substantial hurdles in surviving even the pleading

11   stage, even when the alleged breach led to the exfiltration of data far more sensitive that payment

12   card information. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB)

13   (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases).

14        Additionally, Bombas argued in its Motion to Dismiss (ECF No. 38) that Plaintiff (a)

15   failed to plead any present or future injury-in-fact stemming from a 2016 e-commerce purchase

16   that could be fairly traceable to the conduct of Bombas in a manner sufficient to establish Article

17   III standing under Rule 12(b)(1); and (b) failed to state a claim under Rule 12(b)(6) for (i)

18   negligence and negligence *per se*, and any such claim for negligence would also independently

19   be barred by the economic loss doctrine, and (ii) violation of California's Unfair Competition

20   Law ("UCL") because he does not assert an injury sufficient to establish statutory standing, fails

21   to allege that Bombas engaged in unfair or unlawful conduct, and has an adequate remedy at law.

22   Bombas further argued that Plaintiff failed to allege that Bombas engaged in any intentional action

23   that harmed Plaintiff's privacy, or allege any independent basis for declaratory judgment. While

24   Plaintiff feels he has valid arguments in opposition (*see, e.g.,* ECF No. 39), he recognizes the risk

25   that Bombas may be successful in dismissing the claims, which would deprive Plaintiff of the

26   ability to bring this action on behalf of the putative class. *Id*.

27

28

Shopify independently asserted strong defenses in their Motion to Dismiss (ECF No. 36) that: the claims against Shopify (USA) Inc. and Shopify Inc. should be dismissed because: (1) this Court lacks personal jurisdiction over Shopify Inc., a Canadian corporation headquartered in Canada that did not purposefully direct its conduct towards California; (2) the complaint violates Rule 8 by failing to distinguish among the defendants and articulate allegations explaining how either Shopify Defendant caused Plaintiff's alleged harm; (3) Plaintiff's negligence claims (Counts 1 & 2) fail to plead to elements of a negligence claim under California law and because the claims are barred by the economic loss rule; (4) the invasion of privacy claim (Count 3) fails to allege either Shopify Defendant engaged in any intentional, egregious invasion of Plaintiff's protected privacy interest; (5) Plaintiff is not entitled to declaratory relief (Count 4) because his underlying claims fail, and because there are no allegations that he will be harmed in the future, given that his complaint admits the alleged security vulnerability was fixed years ago; and (6) Plaintiff has not stated a claim under California's Unfair Competition law ("UCL") (Counts 5 & 6) because (i) he does not have statutory standing, (ii) he has an adequate remedy at law, and (iii) his claims do not plead any "unlawful" or "unfair" conduct by either Shopify Inc. or Shopify (USA) Inc. *Id.*, ¶ 45.   While Plaintiff feels he has valid arguments in opposition, Plaintiff recognizes the risk that Shopify (USA) Inc. and Shopify Inc. may be successful on a motion to dismiss, leaving Bombas as the only defendant. *Id.*

Therefore, given these risks and uncertainties, Plaintiff believes the $225,000.00 Settlement Fund is a good result and provides benefits to the Settlement Class to address the repercussions of the Security Incident.  "Even if plaintiff[s] were to prevail at trial, there is a real risk that plaintiff[s] could recover nothing." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 327 (C.D. Cal. 2016) ("*Spann I*").

Moreover, there was the risk of maintaining class action status through trial.  Class certification in consumer data breach cases is rare—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017),

but more recently occurring in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *10 (M.D. Fla. Apr. 14, 2021) (certifying (b)(3) damages class in data breach to include all class members whose data was "accessed by cybercriminals"), which is now under appeal.  While certification of additional consumer data breach classes may follow, the dearth of direct precedent adds to the risks posed by continued litigation.

### 2. Adequacy of Relief: The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, together, the Settlement Fund and the corrective measures Bombas will take to enhance its cybersecurity (see SA, § 2.5) provide Settlement Class Members with both compensation for the damages they sustained as a result of the Security Incident and enhanced security of their PII.  Settlement Class Members had the opportunity to claim either up to $50.00 for a Basic Award or up to $2,500.00 for a Reimbursement Award, subject to proration if there are insufficient funds to pay these amounts based on the number of claimants, or potential enhancement to up to $100.00 for a Basic Award or up to $5,000 for a Reimbursement Award, if there are sufficient funds in the Settlement Fund to make such enhancements for the valid and approved claims returned.

### 3. Adequacy of Relief:  Attorneys' Fees

The Settlement permits Plaintiff to seek 25 percent of the Settlement Fund in attorneys' fees (or $56,250.00), plus reimbursement of their reasonable costs and expenses, to be paid out of the Settlement Fund.  S.A., §9.1. Plaintiff filed his Motion for Approval of Attorneys' Fees Award, Expenses Reimbursements and Service Award, on September 3, 2021 (ECF No. 52), seeking those amounts, as further articulated in that motion.  Rule 23(e)(3) Agreements and Equality of Treatment.

Finally, the Court should examine whether the Settlement provides preferential treatment to any class member. This analysis turns, among other things, on whether there is any disparity among what Class Members are poised to receive and, if so, whether the Settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the]

1    alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL

2    4512372, at *8 (N.D. Cal. July 24, 2015); *G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ,

3    2015 WL 4606078, at *14 (N.D. Cal. July 30, 2015) (analyzing whether settlement "appears

4    uniform").

5            Here, Plaintiff seeks certification of a single class and all members of the proposed

6    Settlement Class are entitled to the same benefits.  All Settlement Class Members who did not

7    exclude themselves were eligible to submit claims for payment under the Basic or Reimbursement

8    Awards.   The amounts of these reimbursements may vary, but those differences reflect the

9    differing amounts of potential losses Settlement Class Members incurred (if any) because of the

10   Security Incident.   Thus, each Settlement Class Member who submits a valid claim will be paid

11   proportionate to the harm they suffered.

12           **C.      The District's Procedural Guidance**

13           The Northern District of California's Procedural Guidance for Class Action Settlements

14   directs that a motion for final approval should include:

15           information about the number of undeliverable class notices and claim packets, the
16           number of class members who submitted valid claims, the number of class members
             who elected to opt out of the class, and the number of class members who objected
17           to or commented on the settlement. In addition, the motion for final approval should
             respond to any objections.
18

19   N.D. Cal., *Procedural Guidance for Class Action Settlements* (Dec. 5, 2018) (hereinafter "District

20   Guidance").

21           As described above, only 4,715 of the 77,888 emails sent (of the 82,615 identified unique

22   Class Members) were sent to email addresses that were either invalid or returned hard bounces.

23   Angeion Decl. ¶¶ 6-7.  Postcard Notice via USPS first class mail was provided for invalid email

24   addresses or email addresses that received hard bounces. *Id.* As of October 14, 2021, Angeion

25   had received 8,107 Claim Forms for the Basic Award (8,020 via online, 87 via mail) and 715

26   Claim Forms for the Reimbursement Award (710 via online, 5 via mail).  *Id.*, ¶ 13 Class Members

27

28

1   have until January 8, 2022 to cure any deficiencies, therefore Angeion will be able to confirm the

2   total number of valid Claim Forms by approximately January 15, 2022. *Id.*, ¶ 13.  And, as of

3   October 14, 2021, Angeion had received no objections or comments. *Id.* ¶ 15. Moreover, Angeion

4   received no requests for exclusion.  *Id.*, ¶14.

5          This represents an opt-out rate of 0 percent, further supporting Final Approval. *See, e.g.,*

6   *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320–21 (N.D. Cal. 2018) ("[O]nly 406

7   Settlement Class Members have opted out of the Settlement (about 0.0005% of the Class). Such

8   low rates of objections and opt-outs are 'indicia of the approval of the class.'") (citations omitted)

9   (quoting *Hughes v. Microsoft Corp.*, No. 98-CV-01646, 2001 WL 34089697, at *1, *8 (W.D.

10  Wash. Mar. 26, 2001)).

11         **D.     The Notice Program Met the Requirements of Due Process**

12         In any proceeding that is to be accorded finality, due process requires that interested

13  parties be provided with notice reasonably calculated, under the circumstances, to apprise them

14  of the pendency of the action and afford them an opportunity to present their objections. *Mullane*

15  *v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). That means the settlement

16  notices must fairly apprise the class members of the terms of the proposed compromise and give

17  class members sufficient information to decide whether they should accept the benefits offered,

18  opt out and pursue their own remedies, or object to the settlement. *Id.*  Additionally, the notice

19  must be designed to have a reasonable chance of reaching a substantial percentage of the class

20  members.  *Id.* at 318 (explaining notice must be reasonably calculated to reach interested parties).

21         For classes certified under Rule 23(b)(3), "the court must direct to class members the best

22  notice that is practicable under the circumstances, including individual notice to all members who

23  can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Under amended Rule

24  23(c)(2)(B), "[t]he notice may be by one or more of the following: United States mail, electronic

25  means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (effective Dec. 1, 2018).

26

27

28

1   Here, as explained above, the Notice Program was implemented via direct email, along

2   with a dedicated Settlement Website, a dedicated toll-free telephone number, and Postcard Notice

3   to Class Members with invalid email addresses or whose email was returned as a hard bounce.

4   Accordingly, the Court should find the Notice Program was reasonably calculated to give actual

5   notice to Settlement Class Members of the right to receive benefits from the Settlement, and to

6   be excluded from or object to the Settlement, and that the Notice Program therefore met the

7   requirements of Rule 23 and due process.

8   **E.   Final Appointment of Settlement Class Counsel**

9   Under Rule 23(g)(1)(B), "a court that certifies a class must appoint class counsel [who

10  must] fairly and adequately represent the interests of the class." In making this determination,

11  courts generally consider the following attributes: the proposed class counsel's: (1) work in

12  identifying or investigating potential claims; (2) experience in handling class actions or other

13  complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable

14  law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

15  Plaintiff requests that the Court finally appoint John A. Yanchunis of Morgan & Morgan

16  Complex Litigation Group and M. Anderson Berry of Clayeo C. Arnold, APLC as Class Counsel.

17  Proposed Class Counsel meet the requirements of Rule 23(g), as the Court previously appointed

18  the above counsel in the Preliminary Approval Order.  ECF No. 51, ¶ 4.  Proposed Class Counsel

19  have invested considerable time and resources into the investigation of the facts underlying the

20  claims, and have performed work critical to achieving benefits for the Class.  ECF No. 48-1, 22.

21  The proposed Class Counsel firms have significant experience in similar class actions.  *See* ECF

22  Nos. 48-3, 48-7-8 (firm resumes).  The firms have the experience to ensure the implementation

23  of the Settlement and the resources to continue their representation of the Settlement Class.

24  Having worked on behalf of the putative class since the Security Incident was first

25  announced, evaluated the legal and factual disputes, and dedicated considerable time and

26  monetary resources to this litigation, Plaintiff's counsel endorse the settlement without

27

28

NOT. & MEM. OF Ps & As ISO PLTF'S UNOPPOSED
MOT. FOR FINAL APPOVAL OF SETTLEMENT
No. 4:20-cv-04412-JSW

reservation.  Final App. Joint Decl., ¶ 10.

### F.    Ninth Circuit Final Approval Factors

Amended Rule 23 and the District Guidance reflect many of the factors already used in this Circuit for final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Because only factors (7) and (8) have the potential for changing since the preliminary approval stage, with all others being previously addressed, only factors (7) and (8) are further detailed below.

#### 1.    The Presence of a Government Participant

Under the Notice Program, on May 28, 2021, the Attorney General of the United States and the Attorneys General of all U.S. States and Territories were notified by Defendants pursuant to CAFA, 28 U.S.C. § 1715, and given an opportunity to raise any objections.  Final App. Joint Decl., ¶ 13.  Plaintiff is not aware of any such objections.  *Id.*

#### 2.    The Reaction of the Class Members to the Settlement

As described above, the reaction of the Settlement Class has been positive, with no exclusion requests, and no objections or comments. Angeion Decl., ¶¶ 14-15.

### G.    Schedule for Post-Distribution Accounting

Within 21 days after the distribution of the Settlement Funds and payment of attorneys' fees, the parties will file a Post-Distribution Accounting and post it on the settlement website.

//

//

NOT. & MEM. OF Ps & As ISO PLTF'S UNOPPOSED
MOT. FOR FINAL APPOVAL OF SETTLEMENT
No. 4:20-cv-04412-JSW

1

**IV.    CONCLUSION**

2          For the foregoing reasons, Plaintiff respectfully requests that the Court enter the Final

3  Approval Order and Judgment submitted herewith and: (1) approve the Settlement Agreement as

4  fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class for

5  purposes of this Settlement under Rule 23(b)(3); (3) finally appoint Plaintiff as Class

6  Representative for the Settlement Class; (4) finally appoint as Settlement Class Counsel John A.

7  Yanchunis and M. Anderson Berry; and (5) find the Notice Program as implemented satisfies

8  Rule 23 and due process.  Proposed Class Counsel will ensure that shortly after the Court enters

9  the Final Approval Order and Judgment it is posted on the Settlement Website.

10

11  Date: October 15, 2021                    Respectfully Submitted,

12                                            **CLAYEO C. ARNOLD,**
13                                            **A PROFESSIONAL LAW CORP.**

14                          By:    _/s/ M. Anderson Berry_

15                                 M. ANDERSON BERRY
16                                 aberry@justice4you.com
                                   865 Howe Avenue
17                                 Sacramento, CA 95825
                                   Telephone: (916) 777-7777
18                                 Cellular: (415) 595-3302
                                   Facsimile: (916) 924-1829

19                                 JOHN A. YANCHUNIS (*Pro Hac Vice*)
20                                 jyanchunis@ForThePeople.com
                                   **MORGAN & MORGAN**
21                                 **COMPLEX LITIGATION GROUP**
                                   201 N. Franklin Street, 7th Floor
22                                 Tampa, Florida 33602
                                   Telephone: (813) 223-5505
23                                 Facsimile: (813) 223-5402

24                                 *Attorneys for Plaintiff*

25

26

27

28