UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX PYGIN,<br><br>             Plaintiff,<br><br>     v.<br><br>BOMBAS, LLC, et al.,<br><br>             Defendants. | Case No. 20-cv-04412-JSW<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR FEES, COSTS, AND SERVICE AWARD AND ENTERING FINAL JUDGMENT**<br><br>Re: Dkt. Nos. 52, 54 |

This matter comes before the Court on consideration of the motions for final approval of a class action settlement (the "Settlement") and for attorneys' fees, costs, and a service award, filed by Plaintiff Alex Pygin ("Plaintiff"). Defendants, Bombas, LLC ("Bombas"), Shopify (USA), Inc., and Shopify, Inc. (collectively "Defendants"), do not oppose the motions. The Court has considered the parties' papers, including Plaintiff's written responses to questions the Court posed in advance of the fairness hearing, the lack of objections to the Settlement, and the record in this case, and it has analyzed relevant legal authority. The Court also has considered the parties' arguments at the fairness hearing held on November 19, 2021.

For the reasons that follow, the Court HEREBY GRANTS Plaintiff's motion for final approval and GRANTS the motion for attorneys' fees, costs, and a service award.

## BACKGROUND

On July 1, 2020, Plaintiff filed his Complaint, in which he asserted claims against Defendants for negligence, gross negligence, invasion of privacy, declaratory relief, and violations of California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq*. These claims arose after Bombas notified customers, on June 3, 2020, of a data breach (the "Data

1

Breach") that resulted from hackers using a malicious code to scrape information from Bombas' website. That information included "customers' addresses and payment card information, which likely included payment card numbers, CVV security codes, and payment card expiration dates." (Compl. ¶ 2; *see also id.* ¶¶ 3-5.)[1] According to Plaintiff, his and the Settlement Class Members' data was exposed between November 11, 2016 to February 16, 2017. Plaintiff alleged the "hackers got everything they needed to illegally use Bombas' customers' payment cards to make fraudulent purchases, and to steal the customers' identities." (*Id.*)

On September 28, 2020, Defendants filed motions to dismiss the Complaint. One of Bombas' arguments was that Plaintiff lacked Article III standing. After briefing was complete, but before the Court issued a ruling on the motions, the parties stipulated to stay the case because they had settled the Litigation.

On July 12, 2021, the Court preliminarily approved the Settlement, preliminarily appointed Plaintiff as the Representative Plaintiff and his counsel as Class Counsel, and preliminarily approved a settlement class consisting of: All individuals residing in the United States who made purchases on the Bombas website from November 11, 2016 to February 16, 2017. (Dkt. No. 51, Preliminary Approval Order, ¶ 3.)[2]

Pursuant to the notice requirements in the Settlement Agreement and the Preliminary Approval Order, Angeion Group ("Angeion") began to provide Notice to Settlement Class Members on or about August 8, 2021. (*See* Dkt. No. 54-3, Declaration of Stephen Weisbrot of Angeion Group ("Weisbrot Decl."), ¶¶ 5-12.)

On September 3, 2021, Plaintiff filed his fee motion, and on October 15, 2021, Plaintiff filed his motion for final approval of the Settlement. The Court will address additional facts as necessary in its analysis.

//

---

[1] Plaintiff alleges the Shopify Defendants provide Bombas with the e-commerce point-of-sale platform used to take customer's personal and payment information. (Compl. ¶ 1.)

[2] The Court inadvertently omitted the following portion of the definition of the Settlement Class: "and received notice from Bombas concerning the Security Incident on or about June 3, 2020."

2

# ANALYSIS

## A. Subject Matter Jurisdiction.

Plaintiff alleged the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act. Based on the allegations, the Court is persuaded that the parties are minimally diverse, there are at least 100 Class Members, and that the amount in controversy would exceed $5,000,000. (*See, e.g.,* Compl. ¶¶ 64, 82.)

## B. Standing.

Before it can approve the Settlement, the Court also must ensure that Plaintiff has standing. *See Frank v. Gaos*, -- U.S. --, 139 S.Ct. 1041, 1046 (2019). Plaintiff did not raise the fact that Bombas had moved to dismiss for lack of Article III standing when he moved for preliminary approval of the Settlement. Plaintiff did raise that issue in the motion for final approval, which prompted the Court to require Plaintiff to establish his best case for Article III standing.

The "irreducible constitutional minimum" of standing consists of three elements: an injury-in-fact, causation, and redressability.[3] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) ("*Defs. of Wildlife*")). "A plaintiff threatened with future injury has standing to sue if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (internal citations and quotations omitted).

Plaintiff must prove each element with the same manner and degree of evidence required at each stage of the litigation. *Defs. of Wildlife*, 504 U.S. at 561. For example, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" because of the presumption "that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

---

[3] In a class action, standing exists where at least one named plaintiff meets these requirements. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014). Here, Plaintiff is the only class representative so he must be able to show he has standing. *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (stating that "named plaintiffs who represent a class must allege and show they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (internal quotation marks omitted).

3

889 (1990)).

According to Plaintiff, he spent time "dealing with the consequences of the breach, which include[d] time spent confirming that he made a purchase by payment card during the relevant period, reviewing the account compromised by the breach, contacting Bombas and his credit card company, exploring credit monitoring and identity theft insurance options, and self-monitoring his accounts." (Compl. ¶ 52.) He also alleged that he was not aware of any other data breaches that could have resulted in the theft of his credit card information. Plaintiff did not allege any unauthorized use of the credit card at issue. (*Id.* ¶ 53; *see generally* Complaint.)

Plaintiff concedes there is no indication his personal information was misused. However, he argues that is not necessary to establish standing. He argues it is reasonable to infer that the hackers intended to use the data for fraudulent purposes, which shows a substantial risk of harm. He also argues the allegations that he was required to expend time and effort to mitigate the potential harm from the Data Breach provide a basis to find injury in fact. Plaintiff also points to the fact that Settlement Class Members have submitted claims that Angeion has deemed valid. Because this case is beyond the initial pleadings phase, the Court considers the latter information as evidence that would corroborate Plaintiff's risk of harm.

In *Krottner v. Starbucks, Corp.*, the Ninth Circuit held that the plaintiffs sufficiently alleged standing based on the theft of a laptop containing their unencrypted names, addresses, and other personally identifying information, including their social security numbers. 628 F.3d 1139, 1140 (9th Cir. 2010). Although there was no evidence that the thief had actually misused the information, the Ninth Circuit held the plaintiffs sufficiently alleged "a credible threat of real and immediate harm." *Id.* at 1143. In *In re Zappos*, the court held that *Krottner* remains good law following the United States Supreme Court's decision in *Clapper v. Amnesty, International*, 568 U.S. 398 (2013). 888 F.3d at 1025-26. The *In re Zappos* court also concluded that the plaintiffs sufficiently alleged standing where their credit card information had been compromised during a data breach, even though there was no indication it had actually been misused. *Id.* at 1027. The court also rejected the defendant's argument that too much time had elapsed to allow for "imminent harm." *Id.* at 1028. Unlike Plaintiff, however, the named plaintiffs in *In re Zappos*

4

also alleged the hackers had taken over their AOL accounts and sent advertisements to individuals in their contacts. *Id.* at 1027-28; *see also Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 16-cv-00014-GPC-BLM, 2016 WL 6523428, at * (S.D. Cal. Nov. 3, 2016) (stating that *Krottner* teaches that "where sensitive personal data, such as names, addresses, social security numbers, and credit card numbers are improperly disclosed or disseminated into the public -- thereby increasing the risk of future harm to plaintiff -- injury in fact has been sufficiently alleged" but concluding plaintiff had not alleged sufficient facts to show injury in fact based on future harm, in part because credit card involved was cancelled).

The Court concludes the facts alleged are sufficient to reasonably infer that the hackers' intent was not benign and, thus, that the Data Breach created a substantial risk of harm to Plaintiff and the Settlement Class Members; an inference supported by the claims that have been submitted to date. In addition, Plaintiff has stated that he has expended time and effort to monitor his credit, which courts have found sufficient to allege the injury in fact element of standing. *See, e.g., Walters v. Kimpton Hotel & Restaurant Grp.*, No. 16-cv-05387-VC, 2017 WL 1398660, at *1 (N.D. Cal. Apr. 13, 2017) (citing *Lewert v. P.F. Chang's China Bistro*, 819 F.3d 963, 965, 967-68 (7th Cir. 2016)); *Dugas*, 2016 WL 6523428, at *6 (finding plaintiff did allege standing based on allegations of lost productivity due to need to mitigate exposure to fraudulent charges). The Court also concludes Plaintiff's allegations, combined with the evidence of the claims submitted to date, are sufficient to establish the requisite causal connection to Defendants' conduct and that Plaintiff's alleged injuries are redressable.

Accordingly, the Court concludes Plaintiff has provided the Court with a sufficient basis to conclude that he has Article III standing. Therefore, the Court turns to the merits of the motions.

**C.     The Court Grants the Motion for Final Approval.**

**1.     The Requirements of Rules 23(a) and 23(b).**

The Court preliminarily determined Plaintiff had satisfied the requirements of Rule 23(a) and 23(b). The relevant facts have not changed, and the Court incorporates the findings from the Preliminary Approval Order herein. The Court concludes those requirements have been met for final approval.

**2.      Notice, Objections, and Requests for Exclusion.**

The Court also concludes that the Notice: (a) fully and accurately informed Settlement Class Members about the Litigation and the existence and terms of the Settlement Agreement; (b) advised Settlement Class Members of their right to request exclusion from the Settlement and provided sufficient information so that Settlement Class Members were able to decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the proposed Settlement; (c) provided procedures for Settlement Class Members to file written objections to the proposed Settlement, to appear at the Final Approval Hearing, and to state objections to the proposed Settlement; and (d) provided the time, date, and place of the Final Approval Hearing.

Accordingly, the Court concludes the Notice provided: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide due and sufficient notice to the Settlement Class Members regarding the existence and nature of the Litigation, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class Members to exclude themselves from the Settlement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

The Court did not receive any objections or comments to the Settlement from any Settlement Class Member or from persons or entities to whom notice was provided under the Class Action Fairness Act. Angeion and Class Counsel also have reported they did not receive any objections. (*See* Weisbrot Decl., ¶¶ 14-15; Dkt. No. 55-1, Reply Declaration of M. Anderson Berry ("Berry Reply Decl."), ¶ 11; Dkt. No. 59-1, Supplemental Declaration of M. Anderson Berry, ¶ 6.)

Accordingly, all persons who did not object to the Settlement in the manner set forth in the Settlement Agreement are deemed to have waived any objections, including but not limited to by appeal, collateral attack, or otherwise. In addition, the record demonstrates that no Settlement Class Members made a valid and timely request to be excluded from the Settlement. All

Settlement Class Members who have not excluded themselves from the Settlement Class are bound by this Final Approval Order and Judgment.

### 3. The Relevant Factors Weigh in Favor of Concluding the Settlement is Fair, Reasonable, and Adequate.

Federal Rule of Civil Procedure 23(e) permits a court to approve a settlement that will bind a class "only on finding that it is fair, reasonable, and adequate after considering" a number of factors. Fed. R. Civ. P. 23(e)(2); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The factors the Court must consider are whether:

> the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

Plaintiff and Class Counsel have adequately represented the Settlement Class Members. Accordingly, the Court grants final approval to the appointment of Plaintiff Alex Pygin as the Class Representative and grants final approval to the appointment John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, as Class Counsel.

The Settlement appears to be the result of serious, informed, and non-collusive negotiations conducted with the assistance of Martin Quinn, Esq. of JAMS during a mediation session conducted on February 12, 2021. Through that process, the parties negotiated and finalized the basic terms of the Settlement Agreement and resolved issues relating to attorneys' fees only after they had agreed upon the substantive terms of the Settlement. (Dkt. No. 54-2, Joint Declaration of John A. Yanchunis and M. Anderson Berry in Support of Motion for Final Approval ("Joint Decl."), ¶¶ 5-9.) The Court also concludes that the Settlement is a product of an informal exchange of information and the terms of the Settlement Agreement do not improperly

7

grant preferential treatment to any individual segment of the Settlement Class.

The parties negotiated a settlement fund of $225,000.00, which will be used to provide monetary relief to the approximately 83,000 Settlement Class Members. The fund also covers Angeion's costs, attorneys' fees and costs, and the requested service award. In addition to the monetary relief, the parties also negotiated changes to Bombas' business practices that are designed to enhance the security of its e-commerce platform. Plaintiff has adequately described the risks associated with taking this case to trial, including the possibility that he would not be able to maintain class action status up to and including trial. The parties also provided for an effective method for Settlement Class Members to submit claims – allowing for either a basic award or a method to obtain reimbursement for fraudulent charges. As the Court notes, there have been no objections to the Settlement, and the favorable reaction also favors granting the motion.

The Court concludes the Settlement is fair, reasonable, adequate and in the best interests of Settlement Class Members, and it GRANTS Plaintiff's motion for final approval.

**D.     The Court Grants the Motion for Fees, Costs, and Service Award.**

As part of the Settlement Agreement, the parties agreed that Plaintiff could seek a fee award that would not exceed $56,250.00. The Court has an "independent obligation" to ensure Plaintiff's fee request is reasonable. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "The reasonableness of any fee award must be considered against the backdrop of the American Rule, which provides that courts generally are without discretion to award attorneys' fees to a prevailing plaintiff unless: (1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended a substantial benefit to a class." *Id.* (internal quotations and citations omitted).

Plaintiff's claims are based on state law, and the Court applies state law with respect to the fee request. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (2003) (internal quotation marks and citations omitted). There are two methods of calculating attorneys' fees in

civil class actions: (1) the lodestar/multiplier method, and (2) the percentage of recovery method. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001), *disapproved of on other grounds by Hernandez v. Restoration Hardware*, 4 Cal. 5th 260 (2018). Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the lodestar method or the percentage of recovery. *Vizcaino*, 290 F.3d at 1047; *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). California law also allows courts to use the percentage of recovery approach with a lodestar cross-check. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016).

### 1. Percentage-of-Recovery.

Under the percentage of recovery approach, the Court considers total value of the benefits conferred on the class. *See, e.g., Vizcaino,* 290 F.3d at 1047-49; *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977). Under the "percentage-of-recovery" method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth Headset*, 654 F.3d at 941 (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). "The Ninth Circuit has identified several factors a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791480, at *8 (N.D. Cal. Apr. 24, 2019) (citing *Vizcaino*, 290 F.3d at 1048-50).

Viewed from a "percentage of fund" perspective, the fee request here of $56,250 represents 25% of the Settlement Fund and falls squarely within the Ninth Circuit's benchmark. For the reasons discussed above in connection with the final approval, the Court finds the first three factors weigh in favor of concluding a benchmark award is reasonable. (*See also* Joint Decl., ¶ 19.) Class Counsel took the case on a contingent basis and attest that work on this case precluded them from employment on other cases, and that factor also weighs in favor of finding that a benchmark award is reasonable. (*Id.*, ¶ 22; Dkt. No. 52-2, Declaration of M. Anderson Berry in Support of Fee Motion ("Berry Fee Decl."), ¶ 21; Dkt. No. 52-3, Declaration of John A.

9

Yanchunis in Support of Fee Motion ("Yanchunis Fee Decl."), ¶ 23.) Finally, Plaintiff has presented information from which the Court can conclude that a benchmark award is in line with awards in similar cases. (Fee Motion at 13:2-9 (citing cases).) The Court also considers the value of the non-monetary relief obtained by Plaintiff. *Serrano*, 20 Cal. 3d at 34; *see also Walsh v. Kindred Healthcare*, No. 11-cv-50-JSW, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013) ("[t]he parties also negotiated substantial injunctive relief, and when the Court considers the value of that injunction, it reduces the overall percentage of fees that counsel will receive").

Accordingly, the Court finds that the percentage-of-recovery analysis demonstrates the propriety of Plaintiff's requested fees.

### 2. Lodestar.

Under the lodestar method, the Court calculates "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also In re Bluetooth Headset*, 654 F.3d at 941 ("The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.").

Mr. Berry attests that, in total, he and his firm have expended 279.6 hours for an unadjusted lodestar of $130,967.70. (Berry Reply Decl., ¶ 3.) Mr. Yanchunis attests that he and his firm have expended over 39 hours on the case for an unadjusted lodestar of $36,720.00. (Yanchunis Fee Decl., ¶ 11; *see also* Berry Reply Decl., ¶ 5.) The Court has reviewed Class Counsels' declarations and their supplemental chart, which provided additional details on the type of work performed. (Supp. Berry Decl., ¶¶ 3-4, Ex. A.) The total hours claimed by Class Counsel are approved based on evidence presented of the work performed and the results achieved. The Court is also satisfied that Class Counsel have exercised appropriate and significant billing judgment by not requesting fees for unproductive or duplicative work. Accordingly, the Court finds the number of hours that Class Counsel devoted to this case is reasonable.

The second step in the lodestar analysis is to determine the reasonable market value of the attorneys' services at an hourly rate. The Court has examined whether Class Counsel's hourly

10

rates are reasonable within the "relevant community," *i.e.*, the Northern District of California. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Plaintiff bears the burden to "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.*, at 980.

Counsel attest that their rates are commensurate with rates within the relevant community, and they have cited examples of cases in which courts have approved similar rates. (Berry Fee Decl., ¶¶ 15, 19; Yanchunis Fee Decl., ¶ 14.)[4] In large part, the Court finds the hourly rates requested by Class Counsel to be reasonable and in line with the market rates charged by skilled counsel in the Northern District in similar complex civil litigation. For the reasons that follow, to the extent those rates are not commensurate with the market rates in the Northern District of California, the Court concludes it is not necessary to make adjustments to those rates or to reduce the fee award.

A court may adjust the lodestar "upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" *Hanlon*, 150 F.3d at 1029. Class Counsel bore the substantial risk of an uncertain outcome in agreeing to prosecute this case purely on a contingency fee basis, and they have continued to incur fees since they filed the fee motion and the motion for final approval. Indeed, as of November 5, 2021, Class Counsels' lodestar fee continues to exceed the amount of fees they are seeking, and the fee award represents a negative multiplier of 0.335.

The Court concludes that, under the lodestar method, Class Counsel's request for fees is reasonable.

Accordingly, the Court GRANTS Plaintiff's motion for attorneys' fees, and it awards

---

[4] Although Mr. Yanchunis does not provide detail about the experience of the partner and associate who assisted him, each of whom billed at $894.00 per hour, given the negative multiplier involved, the Court will not reduce those rates. Should Mr. Yanchunis appear before this Court in the future, he shall be prepared to provide sufficient information about all attorneys working on a case, so that the Court can assess whether the rates charged are reasonable.

11

1  $56,250.00 in fees to Class Counsel.

2  **E.     The Court Grants the Request for Costs.**

3  Under the Settlement Agreement, Plaintiff is entitled to seek reimbursement of the reasonable costs and litigation expenses. *See also* Fed. R. Civ. P. 23(h); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Plaintiff seeks the reimbursement of litigation expenses and costs in the amount of $8,066.37, which includes court fees, fees for service of process, postage, legal research, and mediation fees. (Berry Fee Decl., ¶ 22; Yanchunis Fee Decl., ¶ 21.) The Court concludes the request is reasonable and is documented adequately in Class Counsels' declarations. *See, e.g., In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995).

The Court GRANTS Plaintiff's motion for reimbursement of reasonable litigation expenses and costs in the amount of $8,066.37.

**F.     The Court Grants Plaintiff's Request for a Service Award.**

Finally, Plaintiff moves for a service award in the amount of $1,000. "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). An incentive award is designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. ... [C]oncerns over potential conflicts may be especially pressing where, ... the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal citation and quotation marks omitted).

Plaintiff attests he has spent approximately 10 hours of his time on this litigation, and has worked closely with Class Counsel in litigating this case. (Dkt. No. 52-4, Declaration of Alex Pygin, ¶¶ 7-8.) The request of $1,000 is below the presumptive benchmark for service awards in

this District. *See, e.g., In re Chrysler-Dodge-Jeep Ecodiesel Marketing and Sales Practices Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019) (noting that $5,000 is "presumptive[ly]" reasonable).

Accordingly, the Court GRANTS Plaintiff's motion for a service award in the amount of $1,000.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motions for final approval and for attorneys' fees, costs, and a service award.

It is FURTHER ORDERED that each Settlement Class Member, including Plaintiff is

> (1) deemed to have completely and unconditionally released, forever discharged and acquitted Defendants and the Released Persons from all claims arising out of or asserted in the Litigation and all Released Claims released under the Settlement Agreement; and (2) barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, these claims.  The full terms of the release described in this paragraph are set forth in Paragraphs 1.28-1.30 and Section 8 of the Settlement Agreement and are specifically approved and incorporated herein by this reference (the "Release").

In addition, Plaintiff and, by operation of this Final Approval Order and Judgment, each Settlement Class Member, is deemed to have waived:

> (i) the provisions of California Civil Code § 1542, which provides that a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party, and (ii) any law of any state or territory of the United States that is similar, comparable, or equivalent to California Civil Code § 1542.

It is FURTHER ORDERED that the Settlement Agreement and this Final Approval Order and Judgment apply to all claims or causes of action settled under the Settlement Agreement, and binds Plaintiff and all Settlement Class Members who did not properly request exclusion.  The Settlement Agreement and this Final Approval Order and Judgment shall have maximum res judicata, collateral estoppel, and all other preclusive effect in any and all causes of action, claims for relief, suits, demands, petitions, or any other challenges or allegations that arise out of or relate to the subject matter of the Litigation and/or the Complaint.

It is FURTHER ORDERED that the Parties shall carry out their respective obligations under the Settlement Agreement in accordance with its terms. The relief provided for in the Settlement Agreement shall be made available to the various Settlement Class Members submitting valid Claim forms, pursuant to the terms and conditions in the Settlement Agreement. The Settlement Agreement is incorporated herein in its entirety as if fully set forth herein and shall have the same force and effect of an order of this Court.

It is FURTHER ORDERED that the Settlement Fund, consisting $225,000.00, shall be used to pay all costs of the Settlement, including all Awards and payments to Settlement Class Members, costs of Claims Administration, payments made to the Claims Referee, the Attorneys' Fees and Expenses Award to Class Counsel, and the Plaintiff's Service Award. If any money remains in the Settlement Fund after the payment of all Settlement Payments to Settlement Class Members, costs of Claims Administration, the Attorneys' Fees and Expenses Award to Class Counsel, and the Class Representative's Service Award, the Parties shall return to the Court seeking direction as to the disposition of these funds, including the selection of a *cy pres* recipient, pursuant to Paragraph 7.6 of the Settlement Agreement.

It is FURTHER ORDERED that the Settlement Agreement and this Final Approval Order and Judgment, and all documents, supporting materials, representations, statements and proceedings relating to the Settlement, are not, and shall not be construed as, used as, or deemed evidence of, any admission by or against Defendants of liability, fault, wrongdoing, or violation of any law, or of the validity or certifiability for litigation purposes of the Settlement Class or any claims that were or could have been asserted in the Litigation, or that Shopify Inc. is subject to the personal jurisdiction of this Court for purposes other than this Settlement.

It is FURTHER ORDERED that the Settlement Agreement and this Final Approval Order and Judgment, and all documents, supporting materials, representations, statements and proceedings relating to the Settlement shall not be offered or received into evidence, and are not admissible into evidence, in any action or proceeding, except that the Settlement Agreement and this Final Approval Order and Judgment may be filed in any action by any Defendant or the Settlement Class Members seeking to enforce the Settlement Agreement or the Final Approval

14

Order and Judgment.

It is FURTHER ORDERED that, consistent with Section 10 of the Settlement Agreement, if the Effective Date does not occur for any reason, the following will occur: (a) this Final Approval Order and Judgment and all of their provisions, will be vacated, including, but not limited to the Attorneys' Fees and Expenses Award and the Plaintiff's Service Award, and the Final Approval Order and Judgment will not waive, release or otherwise impact the Parties' rights or arguments in any respect; and (b) the Litigation will revert to the status that existed before the Settlement Agreement's execution date, and the Parties shall be restored to their respective positions in the Litigation as if the Settlement Agreement had never been entered into.  No term or draft of the Settlement Agreement, or any part of the Parties' settlement discussions, negotiations, or documentation will have any effect or be admissible in evidence for any purpose in the Litigation.

It is FURTHER ORDERED that within 21 days after the distribution of the Settlement Funds and payment of attorneys' fees, the Parties will file a Post-Distribution Accounting with the Court and post it on the Settlement Website.

It is FURTHER ORDERED that, without affecting the finality of this Final Approval Order and Judgment, the Court will retain jurisdiction over this Litigation and the Parties with respect to the interpretation, implementation and enforcement of the Settlement Agreement for all purposes.

The Court hereby dismisses the Action in its entirety with prejudice, and without fees or costs except as otherwise provided for herein and HEREBY ENTERS JUDGMENT in this matter pursuant to Rule 58 of the Federal Rules of Civil Procedure.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: November 29, 2021

_____
JEFFREY S. WHITE
United States District Judge